[No. 11761. Department One. — October 1, 1889.]

## J. W. FALKNER (E. T. STEEN, SUBSTITUTED) RESPONDENT, v. JOSHUA HENDY, APPELLANT.

PARTNERSHIP — JOINT-BUSINESS VENTURE— AGREEMENT FOR INTEREST — EFFECT OF DISSOLUTION. — Whether a joint-business venture in the purchase, repair, and sale of second-hand machinery, conducted in the name of the defendant, who furnished the capital, the profits of which were to be shared with the plaintiff, who was an expert machinist without means or credit, and who repaired the machinery purchased and·sold, created a partnership or not, is not decided; but where the agreement for such venture provided for a special rate of interest on all balances before division of profits, such special rate of interest cannot be charged upon balances of the joint venture which became due to the plaintiff after notice by him of dissolution, but only legal interest can be allowed on balances thereafter accruing, to be compounded annually.

ID. — INTEREST IN LIEU OF PROFITS — PLEADING — FINDING. — An agreed rate of interest which terminates with the dissolution of a joint venture cannot be thereafter charged on balances which become due the plaintiff in lieu of profits realized by the defendant from the investment of the plaintiff's share of the proceeds, in the absence of an original or supplemental pleading making such a case against him as trustee, and a finding within the issues that profits were made equal to the interest allowed.

ID. — TRUST RELATION — COMPOUND INTEREST. — Whether the plaintiff and the defendant were partners or not, the relation between them in their joint venture was so far confidential that it might be the foundation of a voluntary trust, and that the retention of the plaintiff's share of profits by the defendant constituted him an involuntary trustee, who would be accountable for compound interest at legal rates upon moneys fraudulently or wrongfully or oppressively withheld.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*W. H. H. Hart, E. W. McKinstry,* and *Aylett R. Cotton,* for Appellant.

*C. E. K. Royce,* and *Ralph C. Harrison,* for Respondent.

BEATTY, C. J. — This action was commenced in March, 1876, by Falkner, as assignee of Steen. In the course

of the litigation the cause of action was reassigned to Steen, who was thereupon substituted as plaintiff. The complaint alleges the formation of a partnership between Steen and Hendy in 1873, under an agreement the terms of which are fully set out; the carrying on of business in pursuance of the agreement until May, 1875; the dissolution of the copartnership at that date by plaintiff; retention of all the partnership assets by the defendant, and refusal to account. The prayer is, that the partnership be adjudged to be dissolved, for an accounting, receiver, injunction, sale of partnership property, division of the surplus, costs, and general relief. By his answer defendant denies that there had ever been any partnership; but admits an agreement, setting forth its terms, which differ in some particulars from those alleged in the complaint; admits that business was carried on in pursuance of the contract till May, 1875; and admits that plaintiff will be entitled to a share of the proceeds of property in defendant's hands after deduction of the amount of certain notes and other obligations pleaded by way of counterclaim. Upon these issues the cause was tried and very voluminous findings made by the superior court, upon which judgment was entered for the plaintiff in August, 1885, in the sum of $35,254.24. Defendant moved for a new trial, which was denied, and he prosecutes this appeal from the judgment and order.

A very general statement of the contract relations of the parties, and the circumstances out of which they arose, will be sufficient for the purposes of this opinion. The defendant, in 1872, was, and for some years prior thereto had been, the proprietor of a foundry and machine-shop in the city of San Francisco. He was possessed of means and credit. Plaintiff was an expert machinist, but had no means or credit. His business was partly mining, and partly the buying up of second-hand machinery, which he repaired, — sometimes at

defendant's shop, — and sold as occasion offered. Transactions of this kind seem to have brought him and defendant together. In 1872, defendant, at plaintiff's request, advanced the money to purchase two or three large lots of machinery, under an agreement such as is described in findings 4 and 5 of the superior court: "That about the first day of August, 1872, plaintiff ascertained that there was a certain lot of machinery near Santa Barbara, in this state, and the terms and conditions upon which it could be purchased, which, in his judgment, were such that it could be purchased, repaired, and sold at a large profit, and so informed the defendant; that plaintiff and defendant then orally agreed that plaintiff should proceed to Santa Barbara, examine the machinery, and, if satisfied of its value, telegraph that fact to the defendant in this city, where the owner resided; that upon the receipt of such telegram, defendant should close the bargain for the purchase thereof, advance the money required therefor, as well as the money required to pay freight thereon from Santa Barbara to the city of San Francisco, take a bill of sale thereof in his own name, receive possession of the machinery when it reached this city, and retain said possession until such property should be sold, make all necessary repairs thereon at his machine-shop, charge the usual shop rates therefor, deliver the property when sold to the purchaser or purchasers thereof, receive the proceeds of any such sale, deduct therefrom and retain for his own use the amount due him for such repairs on said machinery, also all moneys advanced by him on account of said machinery, either for the purchase price thereof, freight thereon, or for other purpose, with interest thereon from the date of such advances until the receipt of the proceeds of such sale at the rate of one and one quarter per cent per month, and the residue of the proceeds of such sale to be equally divided between plaintiff and defendant; that plaintiff should superin-

tend the shipping of such machinery, if purchased, from Santa Barbara to this city, both parties to use their best exertions in making sales of such machinery; that the machinery was so purchased in accordance with such agreement, and an account thereof was entered in defendant's individual books of account as 'Matanza machinery'; that on this account the machinery was charged with all expenditures made by defendant on its account, including the amount due defendant for repairs thereon, and credited with all moneys received by defendant from the sale thereof; that the expenses of plaintiff in going to and returning from Santa Barbara were charged against such machinery in this account, and credited to plaintiff upon a personal account previously existing between plaintiff and defendant." This was followed by other similar transactions, and on March 15, 1873, the agreement was made which gave rise to this litigation. This agreement, the manner in which business was conducted under it, and the accounts kept, are set forth in findings 7, 8, and 9, of the superior court, as follows: "That on March 15, 1873, the Matanza machinery having been previously brought to defendant's shop, and a portion thereof repaired and sold, plaintiff and defendant entered into a further oral agreement, in which plaintiff stipulated to and did cease from dealing in second-hand machinery on his individual account; that thereafter all second-hand machinery purchased, repaired, or sold by either plaintiff or defendant, and all dealings had therein by either plaintiff or defendant, should be for and on their joint account, and any such machinery should be so purchased, repaired, or sold by either plaintiff or defendant, and all dealings had therein by either of them should be on their joint account, and any such machinery should be so purchased, repaired, and sold upon the same terms and conditions as those in relation to the Matanza machinery, and such terms and conditions were to be applied to all machinery

then on hand, and all machinery which might be purchased, repaired, or sold by either plaintiff or defendant subsequent to that date; that there was not any mention made in this agreement in regard to any losses which might be sustained on any of the property so purchased, or as to any charges or expenses which might be incurred in relation thereto for storage or rent of any premises required or used therefor, nor was there any mention made as to the method or manner in which the accounts between plaintiff and defendant, in relation thereto, should be kept, or the time during which such agreement should remain in force; that thereafter plaintiff and defendant purchased, repaired, and sold second-hand machinery, under and by virtue of such agreement, until on or about the second day of June, 1875; that their manner of transacting the business was substantially as follows: It was conducted in the name of the defendant; the accounts relating to the business were kept by defendant in the same manner and in the same books in which he kept the accounts of his private business transactions, all of which was with the knowledge and consent of plaintiff; that plaintiff occasionally entered the details of orders received in relation to these transactions in the order-book of defendant; that defendant received and disbursed substantially all moneys coming from or connected with the joint transactions of plaintiff and defendant; that the machinery was usually purchased in large quantities, a name given to each particular lot thereof so purchased, and an account, to which plaintiff had access, opened therewith, under the name so given it. Subsequently, however, this was found impracticable, and an account was opened, called the 'merchandise account,' in which all future transactions of plaintiff and defendant in relation to second-hand machinery were entered, and gradually all accounts in relation thereto were merged." Neither plaintiff nor defendant understood that they

were partners, and neither claimed, to the other or to third persons, that they were partners, until plaintiff consulted a lawyer about the time he gave notice of a dissolution. Everything was conducted in Hendy's name, and on his premises. He was exclusively the ostensible owner of all the property involved in the business, and at least believed in good faith that Steen had no interest therein, but only a right to his share of the profits when the property was sold and the profit ascertained.

Hendy kept all the accounts of the business in his own private books, to the knowledge of and apparently without objection from Steen. While matters were proceeding in this way, Steen found that Hendy had purchased at a discount some of his obligations to third parties, and charged them at their face in his personal account. He took offense at this, consulted an attorney, was advised that he and Hendy were partners, and in May, 1875, gave notice of a dissolution.

At this date he was considerably indebted to Hendy, as found by the court. An inventory of the stock in which he claimed a partnership interest was taken, and efforts made to effect a settlement. These failed by reason of the fact that each made claims against the other which he would not admit, and which were not allowed afterwards by the court. Meantime, Hendy continued in possession of the property, as by the terms of the agreement (whether partnership or not) he was entitled to do, and continued to make sales and collections, so that at the date of the commencement of the action, March, 1876, as finally determined after a long and tedious trial, he was indebted to the plaintiff. The state of the account at these different dates is exhibited by findings 26 and 42, which are as follows: "That the court, in this accounting, first adjusted all accounts between plaintiff and defendant up to the second day of June, 1875, on which last-mentioned day the accounts

as adjusted were as follows: '1. The plaintiff was indebted to the defendant on the personal account in the sum of $3,739.08; 2. The defendant had received on account of sales of property belonging to plaintiff and defendant, in excess of all his outlays and expenditures thereon, the sum of $1,483.51; 3. That there were not any debts owing from plaintiff and defendant to other parties on account of their joint transactions; 4. That machinery had been sold by defendant to the value of $10,368.31, for which he held accounts and bills receivable, but upon which the money had not been collected; 5. That defendant then had in his possession a large amount of second-hand machinery, the propery of plaintiff and defendant, inventory of which was made, and a copy retained by each.' [Finding 26.] That at the commencement of this action the accounts between the plaintiff and defendant, as subsequently ascertained by this court, were as follows: '1. The plaintiff was not indebted to defendant in any sum or amount whatever, either upon their joint account or his personal account; 2. The defendant had in his possession the sum of $3,799.60, money collected by him from the sale of the property of plaintiff and defendant, over and above all expenditures made by him, and all advances, with interest thereon, and over and above all sums and amounts which the defendant was entitled to deduct therefrom under the aforesaid agreement between plaintiff and defendant.' That the plaintiff was then entitled to have and receive one half of the sum of $3,799.60, and the defendant entitled to retain the residue for his own use and benefit. [Finding 42.]"

After the commencement of the action, several years elapsed before a receiver was appointed to sell and divide what remained of the partnership (to so call it) stock, and meantime Hendy continued to sell and dispose of it from time to time, and collect the proceeds, all of which he has kept, mingled with his private funds, and used

in his business. He furnished statements of account to Steen from time to time, but the court finds they were not true statements; and although he had in his hands at all times after the commencement of the action considerable, even large, sums to which Steen was justly entitled, he never tendered or offered to pay him any amount whatever. A part of the time he was under process of garnishment in a suit by one of Steen's creditors, but it does not appear that he admitted any indebtedness, or offered to pay any sum into court, or that he would have paid anything to Steen if there had been no garnishment. Very likely, if he had paid Steen what was due him, there would have been no garnishment; and certain it is that he had the use of the money, while Steen and his creditor were deprived of its use.

The court finds, and its finding was not attacked, that the net amount realized by Hendy out of the partnership property (we use this term for convenience merely, not deciding or assuming that it was partnership property), after deducting everything he was entitled to charge against it, was something over twenty thousand dollars, of which one half belonged to Steen. The difference between this sum and the amount of the judgment is about twenty-five thousand dollars, which is made up of interest, computed at the rate of one and one quarter per cent per month, compounded monthly on all balances down to the date of the judgment, August, 1885. The contention between the parties here is over this item of interest. We are clearly of the opinion that the judgment as to interest is erroneous, and that it must at least be materially reduced. As bearing on this element of the judgment, counsel for the respective parties have very elaborately argued the question whether or not the agreement found by the court constituted them partners. In our view of the case, it makes no difference whether there was a partnership or not. Even

conceding there was, the judgment as to interest cannot be upheld.

Counsel for respondent seeks to sustain it on two grounds: 1. He says interest to be compounded at this rate was stipulated by the parties; 2. He claims that the defendant was plaintiff's trustee as to his share of the partnership funds; that he used these funds in business ventures, out of which he made large profits, and that plaintiff is entitled to the avails, which, not being exactly ascertainable, the court allowed according to this measure of computation, viz., interest at one and one quarter per cent per month, compounded monthly.

Neither of these positions is maintainable. 1. There was no such stipulation. The only evidence tending to sustain the finding of the court to that effect is this: In 1874, while the agreement was in force, Hendy proposed to change it so that out of the profits he should get one third on account of his capital and another third for his services, leaving one third only to Steen. Steen declined to accede to this proposition, and Hendy then proposed that they should settle up. Thereupon Steen said he was willing that interest at bank rates, which were then one and one quarter per cent, should be charged on all balances. Apparently this was agreed to, and the business proceeded as before. This stipulation, however, was merely an element of the partnership agreement, and, as made and intended, only applied during its existence to the monthly balances found due Hendy on account of advances of capital for carrying on the business. It ended when the partnership ended, and that was at the time plaintiff gave notice of its termination, in May, 1875, nearly a year before this action was commenced. This is alleged in the complaint, not denied in the answer, and is clearly proved by the evidence. The finding or assumption of the court that the partnership continued down to the entry of the decree in August, 1885, is in conflict with the pleadings, and

wholly unwarranted. There was, therefore, no agreement by virtue of which this extraordinary rate of interest could be allowed. Nor could it be allowed in lieu of profits made by Hendy in the business ventures in which he used plaintiff's share of the funds. To charge Hendy as a trustee in this manner, a case must have been made against him either in the original or by an amended or supplemental complaint. Nothing of the sort was done, and the findings, which are supposed to sustain the decree on this ground, are wholly outside of any issues in the case. But in fact there is no finding that Hendy made profits equal to the interest allowed. It is only assumed that he might have done so. But, we repeat, if there had been such findings, they would have been outside the issues. We do not deem it necessary to decide the question, so much debated by counsel, whether the parties were partners. Whether they were or not, the amount due the plaintiff, except as to the matter of interest, was correctly computed, and the relation between the parties was to that extent confidential that it might have been the foundation of a voluntary trust, and the retention of the money gained by its violation constituted the defendant an involuntary trustee for plaintiff of his share of the profits of the business. He is, therefore, though not a partner, accountable as a trustee; and we have recently held (*Adams* v. *Lambard, ante*, p. 426), that compound interest at legal rates may be charged against such a trustee upon moneys fraudulently, or wrongfully, or oppressively withheld.

The judgment and order appealed from are, for the reasons stated, reversed, and the cause remanded, with leave to the plaintiff, if he be so advised, to file a supplemental and amended complaint charging the defendant with profits actually realized from the use of the trust fund, upon which the cause may be tried anew. Or if the plaintiff elect not to file an amended or supplemental complaint, the superior court is directed,

without a new trial, to state the account between the parties anew in the following manner: The amount found to have been due at the commencement of the action will be taken as a basis upon which interest is to be computed, beginning at that date, compounding annually at the legal rates.' On the sums found to have been collected by defendant from time to time, interest at like rates is to be computed to the next annual rest; the amount of these various sums forming a new principal, upon which interest is to be computed for another year. Interest shall be computed at this rate and according to this method down to the date of the former decree, August 15, 1885, after which time only simple interest shall be allowed; all of which is so ordered.

WORKS, J., and PATERSON, J., concurred.

A petition for a hearing in Bank having been subsequently filed, the following opinion thereon was rendered in Bank on the 30th of October, 1889: —

The COURT. — A rehearing in this case is denied, but the judgment is hereby modified so as to read as follows: —

The judgment and order appealed from are, for the reasons stated (in the opinion filed herein), reversed, and the cause remanded, with leave to the plaintiff, if he be so advised, to file a supplemental and amended complaint charging the defendant with profits actually realized from use of the trust fund, upon which the cause may be tried anew. Or if the plaintiff elect not to file an amended or supplemental complaint, the superior court is directed, without a new trial, to state the account between the parties anew in the following manner: Interest to be computed on the balance found due the defendant June 2, 1875, at the legal rate, till the commencement of this action, March 11, 1876, and credited to defendant. Interest to be computed at the

legal rate on the sums collected by defendant from time
to time between June 2, 1875, till the commencement of
this action and charged against defendant. A balance
then struck. The amount thus found to be due the
plaintiff at the commencement of this action will be
taken as a basis upon which interest is to be computed,
beginning at that date, compounding annually at the
legal rates. On the sums found to have been collected
by defendant from time to time, interest at the like rate
is to be computed to the next annual rest; the amount
of these various sums forming a new principal upon
which interest is to be computed for another year. In-
terest shall be computed at this rate and according to
this method down to the date of the former decree,
August 15, 1885. After which time only simple inter-
est shall be allowed.