[No. 15313.   Department One. — June 11, 1894.]

|103   15|
|s123 468|

# J. W. FAULKNER (E. T. STEEN Substituted), Appellant, v. JOSHUA HENDY et al., Respondents.

APPEAL FROM JUDGMENT—JUDGMENT-ROLL—REPORT OF REFEREE.—It is only the finding of a referee upon the whole issue that must stand as the finding of the court, and form part of the judgment-roll; and a report of testimony made under a first order of reference which does not contain findings of fact does not constitute a part of the judgment-roll, and cannot be considered upon an appeal taken upon the judgment-roll alone.

TRUST—FOLLOWING TRUST FUND—PROFITS—COMMINGLING OF FUNDS.— Where a trustee commingled the funds of the beneficiary with his own, in the prosecution of a large business in which he had invested a capital in comparison to which the trust fund was insignificant, and the trust money was not essential to the business, and did not add materially to the profits, the profits of the business cannot be considered as earned by the use of the trust fund, and the beneficiary is not entitled to follow the fund, and to take so much of the property purchased with the common fund as the successors of the trustee cannot show to be theirs.

ID.—ALLOWANCE OF COMPOUND INTEREST—DATE OF JUDGMENT—NEW TRIAL.—Where it appears that no profits had been made by a trustee from the use of trust money in his business, which can justly be said to be profits made by the use of the trust fund, the trustee is chargeable for such use with compound interest from the date of his appropriation of the fund until the entry of final judgment; and where a judgment had been entered for such interest upon a first trial, which was set aside by the granting of a new trial, it is error to allow simple interest only from the entry of the first judgment.

COSTS—EQUITY CASE—DISCRETION—APPEAL.—The allowance of costs in an equity case is matter within the discretion of the court, and without a statement or bill of exceptions that discretion cannot be reviewed upon appeal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion of the court and in the opinion reported in 80 Cal. 306.

*Clark E. K. Royce*, and *George W. Chamberlain*, for Appellant.

A trustee cannot deal with the trust property so as to derive a benefit to himself, or use the trust funds for his own profit in any kind of speculation or business. (2 Pomeroy's Equity Jurisprudence, secs. 1075, 1076;

Perry on Trusts, sec. 427; Civ. Code, sec. 2229.) The profits made by the trustee by the use of trust funds belongs to the *cestui que trust.* (2 Pomeroy's Equity Jurisprudence, sec. 1075, note; *Docker* v. *Somes,* 2 Mylne & K. 655; *Gunter* v. *Janes,* 9 Cal. 643.) Where the trust estate is mingled with private funds of the trustee, the trustee must bear any loss consequent upon the confusion. (*Brackenridge* v. *Holland,* 2 Blackf. 377, 382; 20 Am. Dec. 123; *Hart* v. *Ten Eyck,* 2 Johns. Ch. 108; *Willard* v. *Rice,* 11 Met. 493; 45 Am. Dec. 226; *Tuttle* v. *Gilmore,* 36 N. J. Eq. 617; *Dean* v. *Thwaite,* 21 Beav. 621; *Little Pitt. Con. Min. Co.* v. *Little Chief Con. Min. Co.,* 11 Col. 223; 7 Am. St. Rep. 226; *Cook* v. *Addison,* L. R. 7. Eq. Cas. 470.) Plaintiff is entitled to a money judgment, which shall be a charge upon all the property of the defendants, for all or any portion of the common fund, which they cannot show to belong to themselves, and .which they have expended upon separate and distinct ventures, which have been a total loss, or in purchasing property which the plaintiff elects not to take in kind, or in personal expenses, with legal interest from the time when such expenditure was made. (*Peters* v. *Bain,* 133 U. S. 670; *Frelinghuysen* v. *Nugent,* 36 Fed. Rep. 229; 2 Lewin on Trusts, *907.) Under the respondents' own authorities the rule is recognized that the trustee is liable to the *cestui que trust* in such a case as this for all profits made by the former. (See *Barney* v. *Saunders,* 16 How. 542; *Utica Ins. Co.* v. *Lynch,* 11 Paige, 524; *Schieffelin* v. *Stewart,* 1 Johns. Ch. 625; 7 Am. Dec. 507; *Brown* v. *Rickets,* 4 Johns. Ch. 305; 8 Am. Dec. 567; *Clarkson* v. *De Peyster,* Hopk. Ch. 426; Lindley on Partnership, 5th ed., 536.) The report of the referee is a special verdict, and is therefore a part of the judgment-roll. (*Thompson* v. *Patterson,* 54 Cal. 546.)

*Cope, Boyd, Fifield & Hoburg, W. H. H. Hart,* and *Nowlin & Fassett,* for Respondents.

The report of the referee constitutes no part of the judgment-roll, and must be disregarded by this court.

(*Nye* v. *Marysville etc. R. R.*, 97 Cal. 461; *Harper* v. *Minor*, 27 Cal. 107; *McAbee* v. *Randall*, 41 Cal. 136; *Emeric* v. *Alvarado*, 64 Cal. 529–94; *Douglas* v. *Dakin*, 46 Cal. 49; *Gilman* v. *Bootz*, 80 Cal. 564; *Strathern* v. *Dakin*, 63 Cal. 478; *Cleland* v. *Walbridge*, 78 Cal. 358; *Batchelder* v. *Baker*, 79 Cal. 266; *Spinetti* v. *Brignardello*, 53 Cal. 281; *More* v. *Del Valle*, 28 Cal. 174; *Mendocino County* v. *Morris*, 32 Cal. 148; *People* v. *Empire G. & S. M. Co.*, 33 Cal. 171.) As it is impossible to ascertain the actual profits realized by the defendant either from his own money or from the mingled fund, he cannot be charged with more than legal compound interest. (*Estate of Clark*, 53 Cal. 359; *Barney* v. *Saunders*, 16 How. 542; *Utica Ins. Co.* v. *Lynch*, 11 Paige, 524; *Schieffelin* v. *Stewart*, 1 Johns. Ch. 620; 7 Am. Dec. 507; *Brown* v. *Rickets*, 4 Johns. Ch. 303; 8 Am. Dec. 567; *Clarkson* v. *Dé Peyster*, Hopk. Ch. 424, 426; *Rocke* v. *Hart*, 11 Ves. Jr. 59–61; *Sutton* v. *Sharp*, 1 Russ. 146; *Hilliard in Bankruptcy*, 1 Ves. Jr. 90; *Walker* v. *Woodward*, 1 Russ. 107; 2 Lindley on Partnership, 5th ed., star pages 524, 525, 536, 537, 598, 599, 609, 610; *Cruce* v. *Cruce*, 81 Mo. 685–87; *Jones* v. *Foxhall*, 15 Beav. 385; *Willett* v. *Blanford*, 1 Hare, 253; *Brown* v. *De Tastat*, 1 Jacob, 284; *Crossley* v. *Derby Gas Light Co.*, 3 Mylne & C. 435; *Wedderburn* v. *Wedderburn*, 2 Keen, 750; 4 Mylne & C. 44.) Under the terms of the agreement and the understanding of the parties the mingling of the funds was proper, and the trustee should not be allowed to suffer therefor, as the *cestui que trust* became a mere creditor. (*Knatchbull* v. *Hallett*, L. R. 13 Ch. Div. 696, 702, 703.)

TEMPLE, C.—This is an action for an accounting, and has been pending seventeen years. This is the second appeal to this court, the first being reported in 80 Cal. 636, where a full statement of the facts may be found. Prior to the entry of the judgment which was before the court on the first appeal, the amount of money belonging to Steen which defendant Hendy had received was fixed by stipulation. On the sum so agreed upon the

CIII. CAL.—2

court allowed interest at the rate of one and one-quarter per cent per month, compounded monthly. The defendant appealed, complaining of this rate of interest. One ground upon which the rate was defended here was that Hendy held the money as trustee for Steen, and had wrongfully used the funds in his business, in which he had realized a profit greatly exceeding the rate of interest allowed. This court decided that the rate could not be allowed, and remanded the case, with leave to the plaintiff " to file a supplemental and amended complaint, charging the defendant. with profits actually realized from the use of the trust fund, upon which the cause may be tried anew." Otherwise the direction was that without a new trial interest be computed on the balance due the defendant June 2, 1875, at the legal rate, till March 11, 1876, and credited to defendant, interest to be computed at legal rates on the sums collected by defendant from time to time between June 2, 1875, till the commencement of the action, and charged against the defendant. Upon the balance then found interest to be computed at legal rates, with annual rests until the time of the first decree, from which time only simple interest shall be allowed.

When the case reached the lower court plaintiff filed a supplemental and amended complaint, as permitted by the order of this court. February 27, 1891, the trial court referred the case to E. B. Young, Esq., " to inquire what profits the defendants, or either of them, have actually realized by the use of the money or property of the plaintiff, or in which the plaintiff had an interest, since June 2, 1875, and to state any and all profits actually realized by such use, and report a statement of the same." The order then proceeds to specify at length, and with considerable particularity, what matters and questions the referee shall investigate and determine, and also directs him at request of either party to " make special findings upon any question of fact which may arise during the trial before him, and state and report any other matter touching the true

state of the account between the parties." The referee had full power to take evidence, and was to return with his report all testimony and evidence and proceedings had and taken before him. August 17, 1892, the referee not having reported, the court made a second order of reference as follows:

"By agreement of parties hereto, it is ordered that the evidence taken before the Hon. W. T. Wallace be, and the same is hereby, submitted to E. B. Young, the referee heretofore appointed herein, for his considera-tion. It is further ordered that the said referee shall report findings of fact and conclusions of law herein, and a judgment thereon. It is further ordered that nothing in this order contained shall affect in any man-ner or way any order heretofore made in the above-enti-tled action."

Since by this last order the referee was to report find-ings of fact, conclusions of law, and a judgment, it is difficult to discover any utility in requiring the referee to answer all the numerous questions propounded by the court and by counsel under the leave given in the first order of reference. However, if it had been doubt-ful before, as I think it was not, the second order makes it certain that under the first order of reference the ref-eree was not expected to report findings of fact which should be the basis of a judgment.

On the 5th of November, 1892, the referee filed two reports, both of which are printed in the transcript. One is entitled by the referee, "Report of E. B. Young, referee under order of court, filed herein March 2, 1891." The first order was filed on the last-mentioned date. This report is a lengthy statement of the sub-stance of the testimony, the reasons of the referee for certain conclusions, and why certain questions cannot be answered, and the answers of the referee to a great many questions propounded by the court and by coun-sel. It contains, also, arguments with citations of authorities, and in some cases refers to specified testi-mony, which presumably was filed with the report, but

is not in the transcript, for answers to certain questions. The other report contains formal findings of fact, conclusions of law, and a judgment.

This appeal is taken by the plaintiff upon the judgment-roll alone. His principal points are based, to some extent, upon the conclusions of the referee, as shown in the report made under the first order of reference, and that report is constantly referred to for facts to sustain appellant's contention. Respondents contend that this report does not legally constitute a part of the record, and cannot be referred to for any purpose.

On this proposition I think respondent's contention must be sustained. If the report of a referee is part of a judgment-roll, it must be on the ground that it is a finding. (Code Civ. Proc., sec. 670.) We find from the code that a reference may be had either to try an issue or to ascertain a fact necessary to enable the court to determine an action or proceeding. (Code Civ. Proc., sec. 638.) And in section 639 of the Code of Civil Procedure: 1. To decide the whole issue or determine a specified part; 2. To take an account for the information of the court before or after judgment; 3. To determine a question of fact not arising from the pleadings; and 4. When necessary for the information of the court in a special proceeding. The finding of a referee upon the whole issue must stand as the finding of the court, and judgment may be entered thereon. (Code Civ. Proc., sec. 644.) This must be the finding referred to in section 670 of the Code of Civil Procedure. As the report made under the first order of reference is not such a finding, it does not constitute a part of the judgment-roll.

Appellant, to sustain the proposition that the report is a part of the judgment-roll, cites *Thompson* v. *Patterson*, 54 Cal. 542. That case was decided in Department, and the opinion was written by Mr. Justice McKee. In that opinion he used the following language: "But errors 'shown and illustrated by the findings and report of a referee on its face' are part of the judgment-roll of

a case; for a referee appointed to try and determine a case is, *quoad* the trial of the case, in the place of the court, and his findings and report are the equivalent of the findings and decision of the court itself."

"When a referee," says the court in *Harris* v. *San Francisco etc. Co.*, 41 Cal. 393, "reports his decision in the whole case, his report stands as a special verdict." "The finding and report of a referee are, therefore, part of the judgment-roll of a case." The court was evidently considering the case of a referee to try a case and report a judgment, when it is true the findings and decisions take the place of findings and decisions of the court, and such papers and no others constitute the judgment-roll when the case is tried by a referee as would if the case were tried by the court.

The ambiguous use of the word "report" is taken from *Harris* v. *San Francisco etc. Co.*, 41 Cal. 393, where section 187 of the Practice Act was under consideration. In that section the word "report" is evidently used for finding or decision. In section 670 of the present code the word "finding" was substituted for report. That case, therefore, is not authority for appellant, and this appeal must be considered upon the judgment-roll alone.

Appellant contends that there is no finding upon certain issues; conceding, however, that upon all those issues findings had been for the plaintiff, they could not affect the conclusion which it seems to me must be reached in the case.

In addition to the facts found on the first trial the court now finds: That Hendy conducted the business in which he and plaintiff were jointly interested under the belief that Hendy was the sole owner of the goods, and that Steen only had the right to compensation for his services, which it was agreed should be one-half the net profits. That prior to the second day of June, 1875, Hendy was the owner of a large amount of real and personal property, greatly in excess of the value of the property in which Steen was interested, and subsequently to that date became the owner of large amounts

of real and personal property, and was successfully engaged in various business enterprises from which he made large profits and others in which he'made large losses; and that he used in his business and kept but one bank account in which all moneys, including the fund in which Steen was interested, were deposited. Also that: "It is impossible in any manner or way to ascertain the actual profits realized by the said Joshua Hendy and the defendant corporation since the second day of June, 1875, from the use of his own money individually, or from the moneys received by him, the said Joshua Hendy, from the sales of property in which the said Steen and the said Hendy were jointly interested, as aforesaid, or from the use by the said Hendy and the said corporation of the moneys received by said Hendy of the moneys belonging to said Steen." That June 23, 1891, Hendy paid plaintiff ten thousand three hundred and eight dollars and fifty-three cents, which was the full sum of money received by Hendy for the use of plaintiff.

The corporation defendant was organized by Hendy, and he practically owned all the stock and had entire control and management of it. No notice need, therefore, be taken of it as an entity distinct from Hendy, further than to say that there is no foundation for appellant's charge that it was organized to confuse the accounts and prevent plaintiff from following his property, or that it did have any such effect. On the contrary, it was found, and must be taken as true, that Hendy did not suppose that the moneys were received or held by him as the trustee of Steen. The court having found that the actual profits cannot be ascertained, gave the plaintiff interest in lieu of profits, calculated as directed by this court on the first appeal, but allowed only simple interest from the date of the first judgment.

Appellant is not satisfied with this decree. He says the former judgment of this court gave him the option to accept a judgment for interest, or to claim actual profits; that he exercised this privilege by electing

to take the actual profits, and, therefore, the decree entered is a denial of the relief which it was expressly decided on the former appeal that he was entitled to; that the difficulty in determining actual profits arises from the fault of defendant, who wrongfully mingled the funds; that under such circumstances the burden of separation should be placed on defendant. He says: "The plaintiff claims that he is entitled to take so much, or all, or any one or more pieces or parcels of property now held by the defendant, or either of them, purchased with the common fund, or any part thereof, as the defendants cannot show to be theirs."

It is true plaintiff was given an option, either to accept a modification of the judgment, or to have a new trial; and he elected to have a new trial; and his rights must now be determined from the facts as shown upon the new trial. Upon the last trial an important fact was established which was not found upon the first trial, to wit: that it is impossible to ascertain the actual profits, either upon the money held in trust, or upon the fund with which such money was mingled. So far as this new fact can effect the determination of the case, the former decision is not controlling.

Appellant gives certain figures showing an increase in the value of Hendy's assets, which he claims should be taken as profits. But no such figures appear in the findings, nor can we say in the absence of a statement that there was any evidence from which any such conclusion could be reached. On the contrary, the finding is that such profits cannot be ascertained. All presumptions are in favor of the correctness of these findings, in the absence of the statement. We may suppose, as the respondent contends the facts were shown to be, that the defendant had for years been conducting a large business, in which he had invested a capital in comparison to which the trust fund was insignificant; that in this business he was making large profits in the manufacture and sale of machinery, invented and patented by himself; that it was shown that the profits

came mostly from the sale of patented articles; that Hendy had good credit, and could have procured all the money he needed at current rates, and that the comparatively small sum of trust money used was not essential to the business and did not add materially to the profits.

Now, if these facts were shown, admitting, as it does not appear from the findings was the case, that such profits can be determined, is it a profit which in any sense was earned by the use of the trust fund? Lord Brougham, in *Docker* v. *Somes*, 2 Mylne & K. 655, answers this question. He says such gains are not profits, but the earnings "of skillful labor very highly paid, and no reasonable person would ever dream of charging a trustee, whose skill, thus bestowed, had so enormously augmented the value of capital, as if he had only obtained from it a profit."

The English cases hold that profits earned because of the goodwill of a business cannot be shared by a beneficiary under such circumstances, and that allowances should also be made for the amount earned by the business management of the members of a firm in whose business trust money has been wrongfully used—not as compensation for managing the fund, but because the profits are taken, not as a right in the beneficiary, but pursuant to a principle of public policy, which is to take from the trustee all advantage which he has gained through the misappropriation of the trust money. (See *Brown* v. *De Tastat*, 1 Jacob, 284; *Crawshay* v. *Collins*, 2 Russ. 325; *Featherstonhaugh* v. *Turner*, 25 Beav. 382; (*Willett* v. *Blanford*, 1 Hare, 253.)

Trusts are as various as human affairs, and these rules might not hold in all cases, as, for instance, where the trustee is required to invest the fund for his beneficiary, or where the money was invested in a single venture or constituted the trading capital. Often, as here, the trustee is under no obligation to earn a profit for the beneficiary, and the wrong done to him consists in not paying the money and in risking it in his busi-

ness.   Here the position of a trustee is very similar to a debtor who neglects paying his debt.   Yet, although the beneficiary is not injured by such use of the money, and there has not even been a wrongful delay in payment, the law intercepts the profits and gives them to the beneficiary in obedience to the policy which, that trustees may not be tempted to use trust money for their own advantage, provides that, though he may lose, he shall never gain by such misuse of the funds.   In this case it is to me quite obvious that the profits, conceding that they have been thus made, were not earned by the use of the trust fund, and that Hendy did not reap any greater advantage from the use of the money than has been allowed to plaintiff.   I think no case can be found where the circumstances are at all similar, in which a more favorable judgment has been given.   Nor do I think it was through Hendy's fault that the profits cannot be ascertained in any other sense than that it was through his fault that the money was used by him at all.   The amount of the trust fund was agreed upon since this suit was brought, and has been paid over.   It cannot be claimed that Hendy has taken any pains to confuse the accounts so as to prevent inquiry or obstruct investigation.   The money was already blended with his by the very nature of the original contract.   Hendy could not separate the funds from his, or even determine the amount of it.   This could only be done by settlement, through agreement or litigation.   Much the larger portion of the proceeds of the property in which Steen was interested confessedly belonged to Hendy. The articles were sold one by one, and to determine Steen's portion of the proceeds of each article, as respondents justly observe, requires the determination of a *quantum meruit,* a determination which could not be made by Hendy.   Now, Steen was only interested in the net profit, one-half of which also belonged to Hendy. It is not reasonable to require Hendy to keep all this capital idle because Steen had a small interest in it which Hendy could not ascertain until their relative

rights should be agreed upon or determined by litigation. Because the parties, after several years of litigation, agreed upon Steen's share, appellant now seeks to have the court regard it as though it had once been a distinct trust fund in Hendy's hands. The money never had any earmarks, and therefore none has been lost through Hendy's fault.

Nor is this going against the conclusion reached on the former appeal. It was there simply held that Hendy held the money in a fiduciary capacity, and must account for all profit made from it or pay compound interest. It now appears that though the money has been used by Hendy, no profits have been made which can justly be said to be profits made by the use of the trust fund. I think it also appears pretty conclusively that the judgment takes from Hendy all possible advantage he could have gained through the use of the trust money. Steen gets all that justly belongs to him, and the rule of public policy applicable to the matter is fully vindicated.

I think, however, the court erred in providing that compound interest should be allowed only until the entry of the first judgment. The rule for casting interest indicated in the former judgment of this court was upon the hypothesis that there would be no new trial or new judgment. It provided for a modification of the existing judgment. Of course, then, the court would not provide for compounding interest after the entry of the judgment, for the code determines the interest which judgments shall bear. Since that judgment was set aside, however, the date of its entry becomes an immaterial circumstance. Interest should have been compounded to the date of the present judgment; but a new trial will not be required.

The case being in equity, the allowance of costs was a matter within the discretion of the court. Without a statement or bill of exceptions that discretion cannot be reviewed here.

I think the case should be remanded, with directions to the trial court to modify the decree by allowing com-

pound interest up to the entry of judgment, and that in other respects the judgment be affirmed.

HAYNES, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion, the cause is remanded, with directions to the trial court to modify the decree by allowing compound interest up to the entry of the judgment, and in all other respects the judgment is affirmed.

GAROUTTE, J., McFARLAND, J., VAN FLEET, J.

Hearing in Bank denied.