[L. A. No. 6740. In Bank.—July 28, 1921.]

In the Matter of the Estate of HARRISON ARMS, Deceased. LUCY R. ARMS, Appellant, v. GERTRUDE HEATH et al., Respondents.

[1] ESTATES OF DECEASED PERSONS—PARTIAL DISTRIBUTION—ADVERSE CLAIM—JURISDICTION.—Where, in a proceeding for partial distribution, the widow of the testator filed written objections to the petition of the residuary devisees and legatees claiming that the property sought to be distributed was community property, and also a cross-complaint to establish a trust in the property in her favor, and the court and all parties interested consented that the pleadings relating to her claim might be so amended as to constitute a complaint in equity to enforce her right and title, and that the case should then proceed in the dual character of a proceeding in the estate for partial distribution and a civil action by her against the residuary devisees and legatees to declare and enforce her right and title to the property, the probate court had jurisdiction to hear and determine both proceedings.

[2] HUSBAND AND WIFE—ENTRUSTMENT OF WIFE'S SEPARATE FUNDS TO HUSBAND — INVESTMENT AND COMMINGLING OF FUNDS — PRESUMPTION OF GIFT.—Where a wife within the first eight years following her marriage delivered to her husband from time to time sums of money which were her separate funds and they were invested by him, and she never thereafter asked him for any account nor took any writing for the repayment thereof, and he never paid her any interest for the use of the money nor rendered her any account thereof, and the marital relationship continued until the time of his death, covering a period of almost fifty-five years,

during which he accumulated a large fortune, from which it was impossible to trace such money through the numerous transmutations it underwent in the course of his business life, a strong presumption or inference arises that she let him have the money as a gift, and never intended to reclaim it in specie, or even to treat it as a debt.

[3] TRUSTS — COMMINGLING OF PROPERTY — REMEDIES OF TRUSTOR.— Where property with the consent of the trustor has been commingled with the property of the trustee, so that no part of it can be definitely traced and segregated from that held by the trustee, or identified as a part of any specific fund or property, none of it can be considered as the property of the trustor, and the trustor's only remedy is a personal action for damages, or for money had and received, as he has no special lien upon the general estate of the trustee which is superior to that of any other creditor; but where the money or property of the trustor can be traced into a particular fund or deposit, where it still remains, though mingled with other money, or where it is used to establish a particular business which was continued in existence and is carried on by the trustee or someone taking from him with knowledge of the trust, the trustor may pursue the property.

[4] HUSBAND AND WIFE—PROPERTY ACQUIRED OUT OF STATE—CHARACTER WITHIN STATE.—Where a husband brings into this state money or property acquired by him during coverture in another state by whose laws it was his separate property, it remains his separate property after it reaches this state, and any property acquired therewith in this state, either by purchase or exchange, is also the separate property of the husband.

[5] ID.—COMMUNITY CHARACTER OF ACCUMULATED PROPERTY — CODE AMENDMENT—INAPPLICABILITY TO VESTED RIGHTS.—The amendment of 1917 to section 164 of the Civil Code (Stats. 1917, p. 827), which appears to declare that all property of a husband or wife acquired after marriage (other than that acquired by gift, bequest, devise, or descent), is community property, regardless alike of the place of its acquisition and of the place where it is situated, except that property conveyed to the wife by an instrument in writing is presumed to be her separate property, does not affect the character of separate property acquired in another state, where its owner died before the amendment became effective.

[6] ID.—TITLE—VESTING.—The property of which a person dies seised vests in his heirs, legatees or devisees immediately upon his death. Laws enacted after his death cannot affect the title received at his death by his successors.

[7] ID.—ELECTION OF WIDOW — EFFECT UPON DEVISE TO RESIDUARY DEVISEES.—Where a testator died a resident of another state

3. Right to follow trust fund, note, 46 Am. St. Rep. 608.

leaving estate in this state and in the state of his residence to his widow for life, with remainder in the property in this state to his sister and nephew, but the widow elected not to take under the will, which election under the laws of such state entitled her to one-half of his estate, which was all his separate property, the sister and nephew were not entitled to immediate enjoyment of their devise, but the widow was entitled to have distributed to her a one-half interest in such devise for life.

[8] ESTATES OF DECEASED PERSONS — REJECTED DEVISE — PERSONS ENTITLED.—Where a legacy or devise is rejected by the beneficiary and there is a residuary clause which would include it by its terms, the property so refused goes into the residue and the residuary legatee or devisee takes it by virtue thereof, but if the residuary clause is not general or is not couched in language that would include the property so refused, such property goes to the heirs at law as property of which the testator died intestate.

[9] ID.—REFUSAL TO ACCEPT TESTAMENTARY PROVISION.—Any person may refuse to accept a devise or legacy, whether the will puts him to an election or not.

APPEAL from a decree of partial distribution of the Superior Court of Los Angeles County. James C. Rives, Judge. Reversed.

The facts are stated in the opinion of the court.

Lucius K. Chase for Appellant.

Milton K. Young and Lyndol L. Young for Respondent.

SHAW, J.—Lucy R. Arms, widow of the decedent, appeals from a decree of partial distribution, embracing certain land held by decedent at his death.

The respondents are residuary legatees under the last will of the decedent, Harrison Arms. Arms died possessed of a large estate amounting to several hundred thousand dollars' worth of property, situated in Illinois, where he then resided, and of certain lots on which was a dwelling-house, in Los Angeles County, California. The real property in California was of the value of about twenty thousand dollars. The respondents filed a petition for the distribution to them of the property in California, including certain household goods, offering to execute such bond as should be required by the court for the payment of their proportion of the debts due from the estate, as provided by the code. (Code Civ.

Proc., sec. 1658.)   The appellant filed objections to the petition, claiming that the property was the community property of herself and her deceased husband; that she had elected to take under the provisions of the law instead of under the provisions of the will, and that the respondents were, therefore, not entitled to the whole of the property.  She also filed a cross-complaint, so-called, wherein she alleged that she intermarried with Arms, the decedent, more than fifty years before his death, and had lived with him as his wife until his death; that at the time of the marriage Arms had no property; that subsequent thereto she received property by inheritance of the value of thirty-five thousand dollars, which she entrusted to him for her use to invest and reinvest the same, and that all the property which said Harrison Arms had at the time of his death consisted of the said thirty-five thousand dollars of property originally entrusted to him, together with the rents, issues, and profits arising and accruing therefrom, and that therefore it was her separate property which was held by him in trust, and praying that it be so adjudged.  The court found that the property was not community property, nor the separate property of the widow, nor property held by her husband in trust for her, as alleged, but that it was all the separate property of the decedent, and that the distribution should be made of the real property, only, as prayed for in the petition.  A decree was entered accordingly.

[1]  Upon the trial the respondents objected to the jurisdiction of the court to try the claim set up in the cross-complaint on the ground that it alleged a claim of title to the property in the widow adverse to that of the decedent, and that such claim was not cognizable by the court in the probate proceeding.  Thereupon the parties, in open court, agreed that the pleadings relating to her said adverse claim might be amended so as to constitute a complaint in equity to enforce her right and title, and that the case should then proceed in the dual character of a proceeding in the estate for partial distribution and a civil action by her against the residuary devisees and legatees to declare and enforce her right and title to the land.  The proper amendments were made and with the consent of the court the case proceeded accordingly.  We perceive no objection to this method of procedure where the court and all the parties concerned con-

sent thereto. The superior court has jurisdiction to hear and determine cases in probate and in equity and its final adjudication, under such circumstances, would be conclusive on all the issues.

The claim of the appellant is that the findings of the court are contrary to the evidence.

Arms died a resident of Illinois and his will was duly admitted to probate in that state. The probate proceedings in California were ancillary to the administration in Illinois. The evidence shows that the estate of the decedent in Illinois was of the value of about four hundred and twenty-five thousand dollars, all but seventy-five thousand dollars of it being in personal property, and that the personal property readily convertible into money was amply sufficient to pay all the specific legacies, debts of the estate and costs of administration. The claims filed against the estate in California had all been paid, except the inheritance tax. Shortly after the probate proceedings were begun the widow elected to take under the law instead of under the will and filed, both in the probate court in Illinois and in that of California, her renunciation of the benefits conferred upon her by the will and her election to take under the law. Under the law of Illinois, a widow whose husband died testate may elect to renounce the provisions of the will, and in that event she is entitled to take one-half of all the property of the estate of the husband. There were no children or descendants of the testator living at the time of his death. In such cases, under the California law, the separate property of the husband descends, one-half to the surviving wife and the other half to the relatives of the decedent—in this case his brothers and sisters and the descendants of such as are dead (Civ. Code, sec. 1386) ; and of the community property the surviving wife takes by descent one-half and the other half is subject to the testamentary disposition of the husband, and in the absence of such disposition, the wife takes the same share of such other half as she does of his separate property. (Civ. Code, sec. 1402.)

After providing for the legacies the will declares as follows :

"I give, devise and bequeath unto my beloved wife, Lucy R. Arms, for her sole use and benefit, during her natural

life only, the use, income and rents of and from all of the remainder and residue of my estate and property.

"Upon the death of my said wife, Lucy R. Arms, and out of the remainder and residue of my property and estate unused and unexpended for my said wife, as hereinbefore provided and directed, I hereby make gifts, devises and bequests as follows: (Then follow bequests amounting to $20,000, and it then proceeds as follows:) Upon the death of my wife, Lucy R. Arms, and after the payment of all of the gifts, devises and bequests hereinbefore mentioned and provided for are paid and distributed, I give, devise and bequeath all the rest, remainder and residue of my property and estate . . . to my sister, Gertrude Heath . . . and my nephew, George L. Arms, . . . share and share alike."

We will first consider the claim under the cross-complaint, to the effect that the estate of Harrison Arms consisted entirely of the proceeds, income, and profits of the money entrusted to him by his wife in the early years of their married life.

In *Dimmick* v. *Dimmick*, 95 Cal. 328, [30 Pac. 547], under conditions similar to those here appearing, it was claimed that the property in question there was the separate property of the estate of Julia A. Dimmick, the deceased former wife of Elmer D. Dimmick, and not the community property of that marriage. On this point the court said: "While the wife [Julia A.] had some separate property very many years ago, at that time it passed into the hands and commingled with the funds of her husband, an active business man engaged in numerous speculations in land, so numerous and so varied that at the date of this recent transfer it is impossible to say that one dollar of the money which she received from her father's estate, or its proceeds, passed into this tract of land."

The testimony here shows that the widow was married to Arms in 1861, that her husband was then without means, as she termed it, "a poor boy," that within the next eight years she received by inheritance funds amounting to thirty-five thousand dollars, that she gave it to her husband "to invest in *our* business," that she "let him borrow it" of her to go into business, that she "let him have the money for use in *our* business there, for the use of both of us," that she "let him use it for my use," that she first gave

him one thousand two hundred dollars to buy oil stock and then five thousand dollars, that he bought out part of a livery business in the year 1864, in Toledo, Ohio, with the five thousand dollars, that afterward he sold that livery business and with the proceeds started a better one and bought more horses, that he then added an omnibus business, and then sold both the livery and omnibus business and started what she called the "Arms Palace Car business," in Toledo, Ohio. Just when this occurred does not appear, but this car business was carried on in Toledo until 1887, when he moved the business to Chicago, and there, until his death, it was carried on under the name of the Arms Palace Car Company, a corporation, of which he owned half the stock. How much of his estate consists of this stock does not appear. Some of the money she paid to him—how much she did not say—was paid for a silver mine which he bought. It does not appear what was done with this mine, nor what became of the oil stock above mentioned. She paid him the money from time to time and many years ago. She never asked him for any account nor took a note or other obligation to repay the money. He never paid her any interest or any return for the use of the money nor rendered to her any account thereof. In his will he states that he had at divers times presented his wife with money and property of the aggregate value of more than two hundred thousand dollars. She would not admit this value, but she did not deny the receipt of money and she admitted that he had deeded her some land in Toledo, Ohio, which he had bought with the money received from her, and which she had subsequently sold for one hundred thousand dollars; also that he bought land in Michigan with the money.

[2] It is obvious from her testimony that her husband was a very active, enterprising, and successful business man and that the fortune of which he died possessed was largely the result of his own ability, energy, and industry. It is also apparent that it would be impossible at the present time, from the meager account which she was able to give, to trace the money which she delivered to him so many years ago through the numerous transmutations it underwent in the course of his business life so as to ascertain now what proportion of his estate is the increase from investments of her money, conceding that he held it in trust, and what pro-

portion is the result of his own earnings and the increase thereof. Under such circumstances, and in view of the long-continued course of conduct of both parties indicating that the property was regarded and treated as that of the husband, a strong presumption or inference arises that she let him have the money as a gift and that she never intended to reclaim it in specie, or even to treat it as a debt. In view of the vagueness of her testimony as to the transactions between herself and her husband it cannot be said that the court was bound to take her general statements and conclusions as a fact in opposition to this presumption. If his fortune had been accumulated in that manner in California, the presumption would be that it was property acquired during marriage and was therefore community property. Under the laws of Illinois, as proven to the court below, the property acquired during the marriage is the separate property of the husband, unless it is transferred, conveyed, or given to the wife, in which event it becomes her separate property.

[3] Where property, with the consent of the trustor, has been in that manner commingled with the property of the trustee, so that no part of it can be definitely traced and segregated from that held by the trustee, or identified as a part of any specific fund or property, none of it can be considered as the property of the trustor. "The right of pursuing it fails when the means of ascertainment fails. This is always the case where the subject matter is turned into money and mixed and confounded in a general mass of property of the same description." Where the identity cannot be traced the trustor "is forced to rely upon the personal liability of the trustee. . . . He has no special lien upon the general estate of the trustee which is superior to that of any other creditor," and his only remedy is a personal action for damages or for money had and received. (*Lathrop* v. *Bampton,* 31 Cal. 23, [89 Am. Dec. 141].) There are many other cases to the same effect. (*Byrne* v. *Byrne,* 113 Cal. 299, [45 Pac. 536]; *Reid* v. *Reid,* 112 Cal. 278, [44 Pac. 564]; *Estate of Boody,* 113 Cal. 687, [45 Pac. 858]; *Orcutt* v. *Gould,* 117 Cal. 316, [49 Pac. 188]; *McGrath* v. *Carroll,* 110 Cal. 83, [42 Pac. 466]; *Miller* v. *Ash,* 156 Cal. 565, [105 Pac. 600]; *Rowland* v. *Madden,* 72 Cal. 18, [12 Pac. 226, 870]; *Faulkner* v. *Hendy,* 103 Cal. 15, [36 Pac. 1021]; *Estate of Dutard,* 147 Cal. 257, [81 Pac. 519]; *Title etc. Co.*

v. *Ingersoll*, 158 Cal. 484, [111 Pac. 360] ; *People* v. *California etc. Co.*, 175 Cal. 759, [167 Pac. 388].) The case is different, of course, where the money or property of the trustor can be traced into a particular fund or deposit, where it still remains, though mingled with other money, or where it is used to establish a particular business which was continued in existence and is carried on by the trustee or someone taking from him with knowledge of the trust. *Elizalde* v. *Elizalde*, 137 Cal. 641, [66 Pac. 369, 70 Pac. 861] , *Moore* v. *Jones*, 63 Cal. 15, and *Byrne* v. *McGrath*, 130 Cal. 316, [80 Am. St. Rep. 127, 62 Pac. 559], are of this character. The evidence in this case is not of such character that we can say, as matter of law, that the court below should have found that the fund can be traced and identified, within the rules laid down in the cases last cited.

Our conclusion is that the findings that the property was not the separate property of Lucy R. Arms nor subject to any trust in her favor is not contrary to the evidence.

What has been said establishes the fact that the property which Harrison Arms accumulated and earned in Illinois, during coverture, was not community property of the marriage, but was his separate property. **[4]** It has long been the established law of this state that where a husband brings into this state money or property acquired by him during coverture in another state by whose laws it was his separate property, it remains his separate property after it reaches this state, and that any property acquired therewith in this state, either by purchase or exchange, is also the separate property of the husband. (*Kraemer* v. *Kraemer*, 52 Cal. 302; *Shumway* v. *Leakey*, 67 Cal. 460, [8 Pac. 12]; *Estate of Niccolls*, 164 Cal. 372, [129 Pac. 278] ; *Estate of Warner*, 167 Cal. 686, [140 Pac. 583].) It appears without dispute that the land ordered distributed to the residuary legatees was purchased by the decedent with money brought by him from Illinois which was a part of the property there accumulated by him as aforesaid, and which was therefore his separate property. It follows that said land was also his separate property and subject to his testamentary disposition. This being the case, it was disposed of in his will by the residuary clause above recited, the separate property being subject to his testamentary disposition according to the law of this state.

[5] The amendment of 1917 to section 164 of the Civil Code (Stats. 1917, p. 827) purports to change the above-stated rule as to property acquired in another state and afterward brought into this state. It appears to declare that all property of a husband or wife acquired after marriage (other than that acquired by gift, bequest, devise, or descent) is community property, *regardless alike of the place of its acquisition and of the place where it is situated,* except that property conveyed to the wife by an instrument in writing is presumed to be her separate property. But this amendment was not in force until July 27, 1917. [6] Arms died on July 5, 1917, and the rights here involved became vested immediately upon his death. Hence the amendment of 1917, even if it is valid, does not affect the case in any manner. We mention it only for the purpose of noting that fact.

On behalf of the appellant her counsel argue that the property acquired by the decedent in Illinois should be treated as community property here, for the reason that "the incidents of the husband's estate in Illinois are more nearly identical with the incidents of ownership of community property in California than with the incidents of the ownership of our separate property," and that "separate property, as we understand the term, is unknown in Illinois." Doubtless the incidents of ownership of separate property in Illinois are not precisely identical with the incidents of such ownership here, for the laws of the respective states relating to the use, enjoyment, disposition, and descent of property are not identical in all respects. But there is no substantial difference between the idea of separate property, as we understand it, and the conception of it prevailing in Illinois. The law of Illinois governing the acquisition, use, enjoyment, and disposition of separate property of the husband is not similar to our law respecting these incidents of community property. Community property is unknown there. There, a conveyance to the wife, otherwise than in trust, vests in her the absolute title, irrespective of the source of the consideration for the conveyance. The same is true as to the husband's title upon a conveyance to him. Transfers of personal property which pass any title or interest therein also pass to the transferee, whether husband or wife, the title to the property as his or her separate property. Separate property there is the sepa-

rate property known to the common law, as it is also here, except as in either state it may have been changed by statute. The rights of the respective spouses upon a dissolution of the marriage by divorce in Illinois are not similar to the rights in community property in this state upon divorce. The rights of the widow in the realty on the death of the husband in Illinois are the same in character as those rights under the common law, except that a fee in one-third has been substituted for the common-law estate of dower. No distinction is made there between property earned by the husband before and after marriage, as it is here, either with regard to marital rights, rights of inheritance, or upon divorce. The husband's power of disposition of his separate estate in Illinois during his life is not restricted, as is his right here to dispose of community property. In short, the incidents of ownership, so far as they are similar at all, are not of such character as to make that which is the separate property of the husband in Illinois community property of the marriage when it is brought into this state. We cannot doubt that this proposition received consideration in the cases on the subject above cited, although it was not specially mentioned. The aforesaid decisions have become a rule of property and cannot be changed by the courts upon considerations such as are here presented.

. The appellant claims further that the court below erred in distributing the entire interest in the real property to the two residuary devisees. The theory advanced in support of this contention is that upon her election to renounce the will and take under the law, the life estate given to her became ineffective, that that interest in the real property thereupon went back into the general estate, and not having been effectually disposed of by the will, the testator died intestate as to that life estate. This being the case and it being his separate property, as we have seen, they say that under the code one-half of it descended to her and the other half to his brothers and sisters and the descendants of such as are dead. (Civ. Code, sec. 1386, subd. 2), and that it should have been distributed accordingly.

[7] We see no escape from the conclusion that the widow is entitled to distribution of a one-half interest in this real estate for the period of her own life. The terms of the will are such that the estate given to the two residuary devisees

did not begin in possession and enjoyment until after her death. It provides that "Upon the death of my wife, . . . and out of the remainder and residue of my property and estate *unused and unexpended* for my said wife," the legacies amounting to twenty thousand dollars were to be paid, presumably by the executors since no provision is made for the payment by any trustees or other person. The residue is then given by the following words: "Upon the death of my wife, . . . and after the payment of all of the gifts, devises and bequests hereinbefore mentioned and provided are paid and distributed, I give, devise and bequeath all of the rest, remainder and residue of my property," to Gertrude Heath and George L. Arms. The phrase "upon the death" usually refers to the time of enjoyment and not to the time of vesting, and doubtless it was so used here. But the decisive point here is the time of enjoyment, and it is clear that this did not begin until after the happening of both of the events mentioned, namely, the death of the widow and the payment of the legacies which did not become due until her death. Hence, the estate in the property in the meantime was not included in the residue described and did not go to said residuary legatees, but was disposed of only by the provision for the wife, and when she renounced it, that portion of the estate remained without effective testamentary disposition. As to that, the effect was the same as if he had died intestate. [8] Where a legacy or devise is rejected by the beneficiary and there is a residuary clause which would include it by its terms, the property so refused goes into the residue and the residuary legatee or devisee takes it by virtue thereof. (*Macknet* v. *Macknet,* 24 N. J. Eq. 289; 18 Am. & Eng. Ency. of Law, 2d ed., 762; 40 Cyc. 1950.) But if the residuary clause is not general or is not couched in language that would include the property so refused, such property goes to the heirs at law as property of which the testator died intestate. (*Bugbee* v. *Sargent,* 23 Me. 271; *Temple* v. *Nelson,* 45 Mass. 584; *James* v. *James,* 4 Paige Ch. 115; 18 Am. & Eng. Ency. of Law, 2d ed., 761; 40 Cyc. 1941.) In California, a widow is not put to her election by a gift to her of the separate property of the husband, unless the will is so drawn as to make an election necessary. As to that property she stands upon the same footing as any other beneficiary. [9] But any person may

refuse to accept a provision for him or her in a will, and of course a widow may do so. When the widow elected to take under the law and renounced the provisions of the will for her benefit, the devise to her of the use, rents, and income of the real property in question during her natural life became inoperative, and that portion of the estate of the testator therefore fell into the undisposed of residue and descended to his heirs at law. The widow was one of the heirs of the husband, with respect to his separate estate, and under the circumstances of this case she was entitled to one-half of all the property not disposed of by the will. It follows that she was entitled to one-half of this life estate, and the other half thereof descended in equal shares to the brothers and sisters of the testator and to the children or grandchildren of any deceased brother or sister by right of representation. (Civ. Code, sec. 1386, subd. 2.) The decree should have made distribution accordingly.

There are cases which hold that upon a refusal of the widow to take a life estate given in lieu of her positive rights under the law, such as dower or other interest in land not subject to the husband's testamentary disposition, where there is a remainder over to residuary devisees, the vesting of the remainder is accelerated so that the residuary devisees may take before the widow's death. But the weight of authority and the better reason is the other way. (*Hauk* v. *McComas*, 98 Ind. 464.) In effect, such a doctrine would operate as a judicial devise of the decedent's estate; a supplementary will not made by the testator. We think the court is without power to do that even if it would be more convenient in the particular case. Moreover, it appears to be contrary to section 780 of the Civil Code.

The judgment is reversed and the cause remanded, with directions to the court below to distribute the life estate in the realty in accordance with this opinion and the remainder therein to the respondents.

Angellotti, C. J., Shurtleff, J., Sloane, J., Lennon, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred, except Angellotti, C. J., who was absent.