Best and another, Appellants, vs. Pike, Respondent.

*May 4 — May 22, 1896.*

*Reference: Powers of referee: Practice: Partnership: Accounting.*

1. The powers of a referee are limited by his order of appointment, and are not to be enlarged by implication or consent of the parties.
2. In an action to dissolve an alleged partnership, and for an accounting, etc., a reference "to take an account between the parties herein and report the same to the court" was a reference for the

information of the court under subd.·2, sec. 2864, R. S., and gave the referee no power to pass upon and determine the basic issues in the case, such as the fact of partnership.

3. Regularly, in such a case, there should be a finding of the fact of partnership, or of the facts in issue upon which the rights of the parties upon the accounting depend, before an account is ordered.

4. Where a referee appointed merely to take an account and report· the same has taken testimony and made findings upon the fundamental questions upon which the rights of the parties depend, his report does not have the effect of a special verdict under sec. 2865; R. S., or preclude the court from making its own findings upon those questions.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

This is an action to dissolve an alleged partnership and for an .accounting. By agreement of the parties there was also included in the action the private and personal accounts· between the parties. The original complaint alleged that on or. about the 1st of January, 1882, the plaintiffs, who were then partners under the firm name of Best Bros., entered into an agreement of partnership with the defendant, *Pike*, for the purpose of purchasing and cutting pine timber and sawing and selling the same, under which agreement ·it was the duty of the plaintiffs to cut and bank the timber, and the duty of the defendant to saw it into lumber· and sell it, it being agreed that the work of cutting and banking should be set off against the sawing and selling. The complaint further alleged that business was carried on under this agreement during the season of 1882, and for some time thereafter, but that the business has long since been completed, and that the defendant neglects to account for the moneys received by him on account of the partnership. The complaint contains the usual prayer for accounting and dissolution of the firm.

The defendant, answering this complaint, admitted the· copartnership, and submitted an account of the lumber dis-

posed of by him, and also set up two counterclaims amounting in the aggregate to about $43,000.

The action was referred on these pleadings to A. E. Dixon to hear, try, and determine the same, and was thereafter tried by such referee, who made a report finding in favor of the plaintiffs and against the defendant in the sum of $13,579.07, which report was confirmed and judgment rendered thereon October 16, 1890.  Afterwards, and upon cause shown, this judgment was set aside, and the action was re-referred by an order in terms as follows: " This matter having come before the court upon motion of Tomkins & Merrill to appoint a referee in place of Hon. S. H. Clough, heretofore appointed, and who has declined to act as such referee, J. J. Miles, Esq., appearing for defendant, and agreeing to the reference, but asking that the reference be to hear, try, and determine; Tomkins & Merrill, as attorneys for the plaintiffs, asking that it be referred to a referee to take an account of the transactions between the parties: *Ordered,* that the above action be and is hereby referred to Joseph Cover, Esq., to take an account between the parties herein, and report the same to the court without unnecessary delay."

Before the taking of testimony was begun, amended pleadings were served and filed.  By the amended complaint it was alleged that a partnership for cutting and manufacturing the lumber was made between the parties substantially as charged in the original complaint, and that the accounts of said partnership are still unsettled.  A second cause of action appears in the amended complaint, claiming $1,697.37 due to plaintiffs from the defendant on account of goods sold and labor performed.

To this amended complaint an amended answer was served, in which the defendant denied that he ever entered into partnership with the plaintiffs, but alleged that about November 1, 1881, he being the owner of a sawmill and the

plaintiffs being the owners of certain stumpage, it was agreed that the plaintiffs should cut, haul, and bank the logs, and the defendant should saw and manufacture the same into lumber, and sell the same, and, after deducting his costs and expenses and advances and interest on the same, the balance, if any, should be equally divided between the plaintiffs and the said defendant. Under this agreement, the answer alleges, the plaintiffs in the winters of 1881 and 1882 cut and banked about 4,000,000 feet of logs, and sold and received for the same $45,108.34; that the defendant paid out and expended in the purchase of additional stumpage and costs, charges, and expenses for the manufacturing, $38,000. Said answer also contained two counterclaims,— one for goods and labor, amounting to $18,929.22; and another for failure to cut a million feet of the logs contracted to be cut, for which damages to the amount of $15,000 are claimed. A reply was served, denying the allegations of the answer.

When the parties appeared before the referee to commence the taking of testimony, the following proceedings took place: "The defendant's counsel, on reading the order, stated to the referee, after consultation, that they understood this order refers this case to the referee to take accounts between the parties, and to make a statement thereof, and also to take the evidence of the respective parties and their witnesses and report the same to the circuit court; and that they do not understand that it is a reference to find the facts in this case, and that, if it were claimed to be the latter, they should object to the proceeding under this form of an order, because, if it is a reference to find and report the facts, the order should so state. Tomkins & Merrill, for the plaintiffs, stated that they understood that the referee should find as to the facts so far as it is necessary to take and report an account between the parties. Thereupon the referee suggested to counsel that he would take

the testimony and refer the question of the construction of this order to the court.  Counsel for defendant objected to· proceeding under any theory of this case, except to take the accounts and evidence and report the evidence to the court,. because the circuit court had no authority to make this order in the present form, and the counsel are wholly in the· dark as to its construction; and they proceeded to take the testimony under the intimations of the referee to leave the· order to the court to determine its construction. "

After the close of the trial the referee made his report, in which he made certain findings of facts in which he found that the plaintiffs and the defendant entered into the partnership substantially as alleged in the complaint; and he further found in detail the amount contributed by the plaintiffs and defendant to such partnership, and the amounts due from the personal accounts set up in the pleadings.  He also attached to his report a statement of account between the parties, wherein it appears that the plaintiffs' total credits amounted to $29,284.80 and their debits to $20,495.33, leaving a balance due to the plaintiffs from the defendant of $8,749.47, with interest from October 1, 1884.

Motions were made on this report by both parties, the plaintiffs moving for judgment upon the report and the findings of the referee, and the defendant for a modification of the report and for judgment in favor of the defendant. Both motions were heard at the same time, and the court modified the report, and made new findings of fact, in which he found there was no partnership ever existing between the parties.  The court also restated the account between the parties, and found that the total credits of the plaintiffs amounted to $26,779.24, and the debits of the plaintiffs (or, in other words, the credits of the defendant) amounted to the same sum.  The court also found that all the parties, for years before the commencement of the action, treated

the transactions as closed and balanced. No costs were allowed to either party, and the complaint was dismissed. From this judgment the plaintiffs have appealed.

For the appellants there was a brief by *Tomkins & Merrill*, and oral argument by *W. M. Tomkins*.

For the respondent there was a brief by *Sanborn, Dufur & O'Keefe*, attorneys, and *H. H. Hayden*, of counsel, and oral argument by *John F. Dufur* and *Mr. Hayden*.

WINSLOW, J.   The question whether there was a partnership between the plaintiffs and the defendant was a very important one in the case.   As will be seen from the foregoing statement of facts, this question was not determined prior to the reference to Referee Cover, nor did the order of reference expressly authorize *him* to determine the question, but simply empowered him to " take an account between the parties, and report the same to the court without unnecessary delay."   Under this order, however, the referee assumed to determine the question, and made findings thereon, and reported them to the court.   These findings had ample evidence in their support, and, if they are entitled to the weight given by this court to the findings of a referee to hear, try, and determine (*Briggs v. Hiles*, 87 Wis. 438), the circuit court was plainly wrong in setting them aside. It becomes necessary, therefore, to determine what are the proper functions and powers of a referee appointed " to take an account between the parties and report the same to the court."

Compulsory statutory references are of three kinds: (1) In an action in which the examination of a long account is necessary a reference may be ordered to " hear and decide the whole issue or any specific question of fact involved therein." This reference is commonly called a reference to " hear, try, and determine," and the findings of a referee so appointed upon the issues referred to him have the effect of the ver-

dict of a jury. *Briggs v. Hiles, supra.* (2) There may be a reference to take an account for the information of the court before judgment, or to carry a judgment or order into effect. (3) There may be a reference to report upon any question of fact, other than upon the pleadings, arising in any stage of an action. R. S. sec. 2864. The statute provides (R. S. sec. 2865) that "when the reference is to report the facts, the report shall have the effect of a special verdict." It has been held, and undoubtedly correctly held, that "it is the order of the court which clothes the referee with power to act." *Stone v. Merrill,* 43 Wis. 72. Therefore the powers of the referee in the present case to decide the issues in the case must have been conferred upon him by the order of reference, or not at all. The proper construction of the order of reference is, therefore, the question first presented.

It is very plain that the circuit judge did not intend to make an order of reference to "hear, try, and determine" either the whole issue or any specific part of the issue, because he refused to do so, though specifically requested to make such an order by the plaintiffs, and, on the contrary, made an order to "take an account" between the parties and report. Clearly this meant "the taking of an account" for the information of the court before judgment, under the second subdivision of sec. 2864, R. S. It is just as clear that this did not mean the determination of the vital issues in the case upon which the rights of the parties upon the accounting depended. Regularly there should be a finding of the fact of partnership or the facts in issue upon which the rights of the parties upon the accounting depend, before an account is ordered. 2 Bates, Partnership, § 966. This is the sensible and logical order of proceeding. The facts and legal questions in issue, if any, which must govern the account, should first be determined, and then the taking of the account may well be referred to a referee, and his task

will be largely, as the statute in that case contemplates, a task involving accurate bookkeeping, and only incidentally involving questions of fact as to disputed items in the account. But no objection or exception was taken to the practice as adopted in this case. The parties introduced all their evidence before the referee; and, while no additional powers were thereby conferred on the referee, but his powers must still be limited to those conferred by his order of appointment, there seems to be no good reason why the testimony which he has taken and reported, and the account which he has stated, should not be received by the court, and why the proper findings should not be made by the court, notwithstanding the fact that the referee has attempted to make findings upon the main issues in the case, which he had no power to do.

We find also from the record that the question of the powers of the referee arose at the inception of the trial, the defendant claiming that the reference was only to state an account and report the evidence, while the plaintiffs claimed that the referee should find the facts so far as was necessary to state the account. When this question arose, the referee said that he would take the testimony and refer the question of the construction of the order to the court; and the trial was proceeded with under this suggestion. Upon the coming in of the referee's report the court evidently construed the order as practically an order of reference to take testimony and state an account, for so it is described in the findings.

Our conclusion is that a referee appointed to take an account between parties under the second subdivision of sec. 2864, R. S., has no power to pass upon and determine the basic issues in the case, such as the fact of partnership. Although it may be difficult, perhaps, to state an account between the parties with such questions undetermined, still, as we have seen, the referee's powers are limited by his

order of appointment, and are not to be enlarged by impli-cation or consent of the parties. This being the situation of the case, it was entirely competent for the circuit court to proceed and make findings upon the issue of partnership or no partnership in the case, and upon the other funda-mental questions upon which the rights of the parties de-pended; and these findings will not be reversed by this court unless they appear to be contrary to the clear preponderance of the evidence.

Examination of the record convinces us that the findings of the court are all sufficiently supported by the evidence, and we shall not, therefore, disturb them. The changes made by the court in the referee's account which are im-portant enough to justify separate notice are four in num-ber:

(1) The court found that the amount of lumber sawed and sold by the defendant was 3,484,875 feet, instead of 4,039,068 feet, as found by the referee, and that the amount received therefor was $38,279.82, instead of $44,186.43. This change is entirely justified by the evidence, which was to the effect that the figures showing 4,039,068 feet of lum-ber were merely an estimate made at the trimmer, while there was much evidence showing that the shrinkage between such an estimate and the actual measurement as the lumber is disposed of is always large, and runs from eight to twenty per cent. It was this shrinkage which the court allowed for in this item.

(2) The referee credited the plaintiffs on the accounting with one half the value of 3,000 cords of slabs and 400,000 feet of mill culls or "scoots" which came from the lumber manufactured, and were retained by the defendant at his mill, and never accounted for. This item was entirely dis-allowed by the court. The reason of the disallowance was this: The evidence was overwhelming to the effect that when the lumber in question was manufactured there was a

universal custom among the ·mills and lumbermen in that vicinity to the effect that the slabs and culls made from lumber belonged to the mill, it not being considered that they were of sufficient value to more than pay for their removal. This being the case, and the parties not being partners, the disallowance was plainly justified.

(3) The court found that Best Bros. delivered only 991,322 feet of their own logs to the defendant's mill, instead of 1,299,550 feet, as found by the referee. This finding is based on ample evidence showing that, although Best Bros. had 1,299,550 feet of logs cut from their own lands, they sold and delivered over 300,000 feet to third parties, and received the money therefor.

(4) The court disallowed a part of the plaintiffs' account for rafting logs, and a part of the plaintiffs' private account. It is sufficient to say as to these changes that they seem to have been entirely justified by the evidence.

We think substantial justice has been done between the parties, and have discovered no errors calling for reversal.

*By the Court.*— Judgment affirmed.