MURPHY et al., Respondents, *v.* PATTERSON,

APPELLANT.

| 24 | 575, |
| s24 | 592, |
| 24 | 575 |
| 31 | 630 |
| 32 | 267 |

[No. 1253.]

[Submitted October 30, 1900. Decided January 7, 1901.

*Partnership—Dissolution—Accounting — Referee — Findings — Conclusiveness—Reference by Stipulation of Parties— Judgment Roll—Partnership Agreements—Interpretation— Review.*

1. Attorneys in an action for the dissolution of a partnership stipulated that the case should be submitted to a referee, who should have power to take testimony, and report findings thereon, and to state a complete account between the parties, and that the cause, together with such report and testimony, and the books of account of the firm, might be argued before and submitted to the court for its consideration and determination. *Held,* that the court was not required to enter a formal order setting aside the findings of the referee before proceeding to determine the case on the evidence, findings and reports submitted, since the referee was not authorized by the stipulation to hear and determine the issues, and his findings were advisory only, and not conclusive on the court.

2. Code of Civil Procedure, Sec. 1141, provides that, when a reference is to report the facts, the findings reported shall have the effect of a special verdict. *Held,* that where the reference provided that a referee should take testimony, and state a complete account between the parties, but did not authorize him to hear and to determine the issues, his findings cannot be given the effect of a special verdict, since the force to be given to the report of a referee depends not only upon the nature of the action, but upon the terms of the order of reference.

3. The "finding" of a referee, which Section 1196 of the Code of Civil Procedure provides shall be part of the judgment roll, is the "finding" designated in Section 1140 of the same Code,—that is one upon the whole issue.

4. In an action for dissolution of partnership and an accounting, evidence reviewed, and *held,* to be sufficient to sustain the findings of the trial court.

*Appeal from District Court, Choteau County; Dudley Du Bose, Judge.*

Action by James T. Murphy and another against George D. Patterson. From a judgment in favor of plaintiffs, defendant appeals. Affirmed.

### Statement of the Case.

Action for dissolution of partnership and an accounting. Under stipulation of parties, cause was referred to David G.

Brown as referee to take testimony, state an account between the partners, and report to the court testimony taken with certain findings of fact thereon.   Stipulation further provided that a decree of dissolution might be entered by the court, all objections to such dissolution being waived; that either party might take exceptions to the report of the referee, or to any finding of the referee, the same as if the reference had been made by the court of its own motion; and that the decree or any order of the court in the premises might be made either by the court or the judge in chambers.   Thereafter testimony was taken before the referee.   To the introduction of any evidence relating to the value of the property of Greenleaf & Co. in July, 1884, plaintiffs objected on the ground that under the agreement of July 1, 1879, made a part of defendant's answer, defendant was to have for his services for the five years it was in force one-fourth of the profits, and was to purchase a one-fourth interest in the original plant, fixed in such agreement at $12,465.60; and the books of the partnership show that this agreement was carried out, that none of the profits were withdrawn, but were reinvested in partnership assets, and that defendant, not having paid for his interest in the original plant, was charged with $3,095 therefor as an original item, thus leaving the interest of each partner to be determined on the final settlement of the affairs of the partnership.   Defendant's testimony was directed solely to the values of cattle and sheep in 1884, and was admitted subject to the above objection.   Defendant introduced no evidence tending in any way to prove the affirmative matters of his answer, nor as to the formation of the partnership, the terms thereof, nor as to his indebtedness to the firm.   The other facts material to the questions presented are stated in the opinion.

*Messrs. Walsh & Newman,* and *Mr. E. W. Toole,* for Appellant.

The case having been referred by stipulation of the parties to a referee of their own choice, to hear, try and determine the issues in the case, such a referee was thereby constituted

a special tribunal, and his findings of fact could not be set aside or disregarded by the Court, and a judgment entered inconsistent therewith.

This case is distinguished from the case of *Bradshaw* v. *Morse*, and cases in other Courts, which hold that the findings of a referee are only advisory to the Court.   There is a distinction between a case referred by consent of the parties, and a case referred by the stipulation of the parties to refer it, which is sanctioned by the Court.   In the first place it is the act of the Court, without the objection, or with the consent of the parties.   In the other, it is the direct act of the parties themselves in selecting a tribunal before which the case shall be tried.   The decision of that tribunal can not be disregarded by the Court.   *Walker* v. *Campbell*, 26 Pac. 123; *Kimberly* v. *Arms*, 129 U. S. 512, *Shutt Inv. Co.* v. *City of Pueblo*, 54 Pac. 644; *Davis* v. *Schwartz*, 155 U. S. 631; *U. S. Trust Co.* v. *Mercantile Trust Co.* 88 Fed. 140-152; *Peabody* v. *Phelps*, 9 Cal. 204; *Schroeter* v. *Schweler*, 23 Hun. 230; *Farar* v. *Bernhen*, 75 Fed. 136.   If it is held that the stipulation of the parties has not any effect upon the reference, and that the reference stands the same as if made by the Court of its own motion, the proceeding of the Court was erroneous.

Section 1140 of the Code of Civil Procedure provides that the findings of the referee must stand as the findings of the Court, and that judgment may be entered upon them in the same manner as if the action had been tried by the Court. Section 1141 provides that the finding of a referee may be excepted to and reviewed in like manner as if made by the Court, and when the reference is to report the facts, the findings reported have the effect of a special verdict.   Whether it be held that the findings of the referee have the effect of the findings of the Court, or of a special verdict, they are sufficient to support a judgment, and judgment should have been entered accordingly.   If the findings of the referee may be reviewed in this case they can only be reviewed in like manner as findings made by the Court.   The Code does not prescribe any manner in which findings of the Court may be reviewed

after they are filed except on a motion for a new trial.

To review the findings of the Court it is necessary to re-examine the issues of fact in the case and that is a new trial. Code of Civil Procedure, Sec. 1170.   The findings of a Court, or referee, constitute a decision upon the issues in the case. When a court has given a final decision upon any matter it has no power to set aside or change it except in the cases pointed out by statute.     Hayne on New Trial and Appeal, Sec. 246. *Whitbeck* v. *Montana C. Ry. Co.* 21 Mont. 102.    The Code only provides for exceptions to findings for a defect therein, or a failure to find on a particular issue.    These formal defects, errors, omissions or clerical mistakes, may be corrected, but nothing more.    The Code does not give the Court authority to review and reverse its own decision, after such decision is filed.    It can set it aside only on a motion for a new trial. It cannot sit as an appellate court to review its own decisions. *Hidden* v. *Jordan*, 28 Cal. 304; *Coweng* v. *Rogers*, 34 Cal. 652; *Price* v. *Lynch*. 38 Cal. 531; *Wunderlin* v. *Cadogan*, 75 Cal. 617; Hayne New Trial & App. Sec. 246-247; *Fisher* v. *Emerson*, 50 Pac. 619 (Utah); *Sharp* v. *Walin*, 124 Ind. 407; *Hamilton* v. *Byram*, 122 Ind. 283; *Levy* v. *Chittenden*, 120 Ind. 37.

If the Court had tried the case, and made findings of its own, or, if the case had been tried to a jury, and a special verdict returned, the Court could not disregard its own findings, or disregard the special verdict of the jury, and make other inconsistent findings, and enter judgment on the last findings, contrary to its own previous findings, or the special verdict of the jury.    A court cannot ignore its own findings, the findings of a referee, or the special verdict of a jury.    *Fabin* v. *Collins*, 2 Mont. 510.    Admitting, for the purpose of argument, that the findings of the referee are only advisory to the Court, and the Court may change, modify or set them aside, yet the action of the Court in this case was erroneous. The findings of the referee have the force and effect of the findings of the Court or the special verdict of a jury, and are binding and valid until changed, modified or set aside.    They

are a part of the record; a part of the judgment roll.   Code of Civil Procedure, Section 1196.   The findings of the referee are certainly valid until set aside by the Court, if the Court has authority to set them aside in this case.   The findings made by the Court did not annul them.   If the findings made by the Court have any effect, they must be taken in connec tion with the findings of the referee, as additional findings. Then both sets of findings will constitute the findings in this case.   Taking the findings altogether, they are. so contradic tory and inconsistent, that they do not support the judgment entered in this case, and the judgment is therefore erroneous and against law, and must be reversed.   *Johnson* v. *Bielen berg*, 14 Mont. 506; *Auther* v. *Bryant*, 38 Pac. 439; *Bank* v. *Miller*, 24 Pac. 1047; *Latshaw* v. *Moore*, 36 Pac. 342; *Langan* v. *Langan*, 89 Cal. 186.   In such cases the judgment will be reversed, and a new reference ordered.   *Smith* v. *Marsich*, 38 N. Y. S. 932.   And the findings must be construed most favorably to the appellant.   *Bonnel* v. *Griswold*, 89 N. Y. 122· *Schwinger* v. *Raymond*, 83 N. Y. 192; *Conselyea* v. *Blanchard*, 103 N. Y. 222, 8 N. E. 490; *Redfield* v. *Redfield*, 110 N. Y. 671, 18 N. E. 373; *Pappenheimer* v. *M. E. Ry. Co.*, 7 N. Y. S. 679.

The so-called "Findings of Fact" by the Court are not find ings of fact, but naked legal conclusions.   The Court cannot deduce from them any legal consequences, because they are themselves legal conclusions.   A finding that one person is in debted to another, or is a creditor of another, or an allegation of indebtedness, is only a conclusion of law, and in a pleading would not raise any issue.   *Kane* v. *Rippy*, 22 Ore. 299; *Smith* v. *Smith*, 7 N. Y. S. 194; *Paulson* v. *Newman*, 64 Cal. 290; *Hershfield* v. *Aiken*, 3 Mont. 442; *Higgins* v. *Germaine*, 1 Mont. 230; *Power* v. *Gum*, 6 Mont. 5; *Stewart* v. *Budd*, 7 Mont. 579; *Merrigan* v. *English*, 9 Mont. 123; *Ohan* v. *San Francisco*, 92 Cal. 437.

*Mr. H. G. McIntire* and *Mr. Massena Bullard*, for Res pondents.

**MR. JUSTICE WORD,** after stating the case, delivered the opinion of the Court.

The first question we will consider is whether or not the court below erred when it disregarded the findings of the referee, and made its own findings of fact and conclusions of law.

Counsel for appellant argue that under the stipulation entered into between the parties to the action, and by virtue of which the cause was referred, Brown, the referee, was empowered to hear, try, and determine the issues presented, and to make his findings of fact, and report the same to the court; and that under these circumstances the referee became a special tribunal, and therefore ''his findings of fact could not be set aside or disregarded by the court, and a judgment entered inconsistent therewith.'' If this position of appellant were supported by the terms of the stipulations before us, we would be disposed to agree with counsel, and to follow the authorities cited by them. Under the stipulation of February 23, 1894, as we view it, the referee was not empowered to hear, try, and determine the issues, but rather to take the testimony, and report the same, together with his findings of fact thereon, to the court; that he should state an account between the parties; and that, when completed, his examination and report were to be filed, and either party should have the right to bring the same on to be heard before the court or judge upon 10 days' notice. The language of the stipulation is that the referee shall have power ''to take testimony,'' and ''to state a complete account'' between the parties. Nowhere in the stipulation is the referee authorized to ''hear, try, and determine'' the issues between the parties, as was the fact in a majority of the cases cited by counsel upon this proposition. Thus, in *Kimberly* v. *Arms*, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764, we find the parties consented that the case should be referred to a master ''to hear the evidence and decide all the issues'' between them. So, in *Davis* v. *Schwartz*, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289, by consent of parties, the case was referred to a master to hear the causes,

and report, not the evidence merely, but his findings of facts and his conclusions of law.    And in *Shutt Investment Co.* v. *City of Pueblo*, 11 Colo. App. 432, 54 Pac. 644,—an action for damages to real property, —it was agreed that the finding and report by commissioners selected by the parties of the amount of damages sustained, if any, should be final and conclusive.

Under Section 1130 of the Code of Civil Procedure "a reference may be ordered upon the agreement of the parties, filed with the clerk or entered in the minutes:    (1) To try any or all of the issues in an action or proceeding, whether of fact or law, and to report a finding and judgment thereon: (2) To ascertain a fact necessary to enable the Court to determine an action or proceeding."    If the reference was made under the authority of this Section the words of the stipulation and the interpretation given it by the parties indicate that the purpose of the reference was not to have the issues tried, and to have reported findings, and a judgment thereon, but rather to ascertain certain facts necessary to enable the Court to determine the action.    But, in our opinion, the reference more properly falls under the provisions of Section 1131 of the Code of Civil Procedure, though made with the consent of the parties.

Weight is given to this construction by the stipulation of February 24, 1897, wherein the parties agreed "that this cause, together with the reports of the referee herein, and the testimony taken before the referee, and the books of account of the firm sought to be dissolved, may be argued and submitted to said court at the present term thereof for its consideration and determination," etc.; thus, in effect, declaring that it was not the referee, but the Court, which was to consider and determine the issues.    Authority for such interpretation of these agreements of parties is found in *Bradshaw* v. *Morse*, 20 Mont. 214, 50 Pac. 53.    In that case—an action for an accounting—the court, of its own motion, referred the cause to a referee to take the testimony of the witnesses, to state an account between the parties, and to report the same

to the court, with his findings thereon.   There, as here, it was argued that the whole case was given to the referee for determination, ''and that, as the whole issue was submitted by order of reference to the referee, the findings of the referee became the findings of the court, and that the court could not modify or correct the report of the referee except on motion for a new trial; in other words, that the court was bound to enter judgment in accordance with the findings of the referee, and could only disapprove, correct, or modify the same on a motion for new trial after judgment.''   This Court held, however, that under the terms of the order the referee was given ''no authority to try and determine the whole issue or case. He was not clothed with the power of a tribunal to that extent by the terms of the order of reference.''   ''Under the terms of the order of reference, the findings which the referee was authorized to make to the court could only be advisory.'' See, also, *Basey* v. *Gallagher*, 20 Wall. 670, 22 L. Ed. 452; *Quinby* v. *Conlon*, 104 U. S. 420, 26 L. Ed. 800; *Caruth-Byrnes Hardware Co.* v. *Wolter*, 91 Mo. 484, 3 S. W. 865; *Bremmerman* v. *Jennings*, 101 Ind. 253; *Best* v. *Pike*, 93 Wis. 408, 67 N. W. 697.   And so, in the case before us, under the order of reference, of which the first stipulation of the parties was a part, the referee had no power to decide any of the issues made by the pleadings.   His findings were, therefore, not conclusive upon the court, but advisory merely; and, being advisory, it was not necessary for the court to make a formal order setting aside the findings of the referee before it could proceed to make findings of its own; and by taking such action the court, in effect, set aside the conclusions drawn by the referee from the testimony.

All the evidence, both the original and supplemental reports of the referee, together with his findings and the objections and exceptions of the parties thereto, were before the court for consideration and determination, and, in so far as any action of the court below was concerned, it was as if the case had been argued and submitted to the court upon the pleadings and evidence in the first instance.   The court was

not bound by any act of the referee. With all the facts be-
fore it, and with the findings of the referee advisory only, we
are cited to no decision which, under an order of reference
similar to the one before us, holds that the Court in an equity
case must formally reject or adopt as its own the findings of
a master or referee. On the other hand, where the purpose
of the reference was—as we hold it was in this case—to have
the referee report certain facts, or the facts upon certain issues
for the information of the Court, so that it could intelligently
act and adjudge the rights of the parties, or where the matter
referred to the referee is collateral to the main issue,—as, for
instance, to state an account between the parties,—then the
findings of the referee are not binding, but advisory merely,
and so may be disregarded by the Court in reaching its decis-
ion upon the merits. (*Bradshaw* v. *Morse, supra*; *Kimberly*
v. *Arms, supra*; *Caruth-Byrnes Hardware Co.* v. *Wolter*;
*supra*; *Erisman* v. *Kerwin*, 8 Okl. 92, 56 Pac. 858; *Field* v.
*Romero*, (N. M.) 41 Pac. 517; *Palmer* v. *Palmer*, 13 How.
Prac. 363; *Muhlenbrinck* v. *Pooler*, 40 Hun. 526; *Harris* v.
*San Francisco Sugar Refining Co.* 41 Cal. 404.)

Counsel for appellant say that the findings of the referee,
under Section 1141 of the Code of Civil Procedure, have the
force and effect of a special verdict. We are of opinion that
the reference contemplated by this section is one where the
referee is called upon to hear and try the issue and report
the facts thereon, and not one like that in the case at bar,
where the referee was not to try and determine, but to take
the testimony, and report the same, with certain findings
thereon, for the information of the Court. Section 1141,
*supra*, is to be read in the light of those sections of the Code
immediately preceding. And, even when the referee is to
report the facts, the force to be given to such report must de-
pend, not only upon the nature of the action, but upon the
terms of the order of reference, for "the terms of the order
of reference determine the scope of the referee's authority."
(*Bradshaw* v. *Morse, supra.*) Entertaining these views, we
cannot give to Section 1141, *supra*, the broad construction
placed upon it by counsel for appellant.

Appellant's counsel next contend that the findings of the referee are, by Section 1196 of the Code of Civil Procedure, made a part of the judgment roll. The "finding" referred to in this Section of the Code is the "finding of the referee" designated in Section 1140 of the Code of Civil Procedure, that is, one upon the whole issue. (*Faulkner* v. *Hendy*, 103 Cal. 15, 36 Pac. 1021.)

Holding, as we do, that the court was not required to enter a formal order setting aside the findings of the referee before proceeding to determine the case upon the evidence, findings, and reports submitted, we have before us but one set of findings,—those of the court below,—and these we will now consider.

Inasmuch as counsel entertain widely different views in regard to the terms of the partnership formed in July, 1884, an examination of the conditions then existing becomes material. Under the agreement of July 1, 1879, to continue in force for five years from date, Greenleaf & Co. contracted to give the appellant, Patterson, one fourth of the profits of their live stock business. In consideration thereof Patterson was to devote his entire time and attention to the care and management of this business. Out of his share of the profits he was to buy and pay for a one-fourth interest in the sheep and other property belonging to said firm, the basis of purchase being the value of the property on July 1, 1879, stated in the agreement to be $12,465.60. Patterson was to pay for said one-fourth interest as rapidly as any of the profits of the business were realized and determined. Greenleaf & Co. were to furnish Patterson a sum not exceeding $25 per month; such sum was to be an advance to him, and was to be paid back by him out of his share of the profits as they should be determined. On all sums furnished him in excess of $200 per annum Patterson was to pay the current rate of interest. Five years from the date of the agreement a final settlement of all accounts was to be had, and final profits were to be arrived at, the basis of calculation being the value of the company property at that time. All profits arising from the business dur-

ing the five years covered by the agreement were to be reinvested in live stock. The agreement further provided that a settlement of all accounts and a statement of the business of the firm should be had on the 1st day of July of each year, or as soon thereafter as practicable.

At the hearing before the referee the defendant offered no evidence in support of the allegations in his answer. His testimony, and that of the witnesses called in his behalf, was directed solely to the question of the value of the company property in 1884. John T. Murphy, one of the plaintiffs, upon matters other than the value of the property in 1884, testified, in substance, as follows: ''Patterson was familiar with the books. In 1884, Patterson, being unable to pay for one-fourth of the original plant, it ($3,095) was charged to him by agreement; the other partners agreed to carry it on the books as a debit against him; it was at his request and his agreement and consent. The contract expired July 15, 1884, and was not completed in the particular that the plant was wound up, and sold out, and valued, and profits arrived at, but simply by agreement the business was continued, he taken in as a partner, and given one-fourth of the plant; he was paying for one-fourth of the original plant, he being taken in as a partner, and acquiring one-fourth of the whole plant by paying for one-quarter of the original plant. The profits remained intact; nothing was taken out by any member of the firm; and we agreed to loan him the amount on the books to buy one-fourth of the original plant. The books were written up on that basis, and the business continued under that agreement; and the further agreement was entered into that he was to have $100 per month for his personal attention to the business. The daily detail books were kept by Mr. Patterson, and they were written up at the end of the year, and copied off by my bookkeeper. Patterson had full knowledge of and participated in it. The books were written up from the original entries, all except the closing entries,—the computation of interest, or something of that kind, at the close of the year. He was usually present at the annual settlements. The sub-

ject of interest was discussed between us; we agreed to carry him for the amount he owed on the purchase price of the original plant at 10 per cent. Any other sums he was to pay 12 per cent. on. This was by agreement with Patterson. The books have been kept in harmony with the agreement. A settlement and adjustment of the accounts was had, and a trial balance struck with Patterson, and with his concurrence and assistance, at least once a year; I representing myself, Chipman, and Greenleaf. This testimony applies to each of the annual statements and trial balances that appear in the books.'' It further appeared on the cross-examination of the witness Murphy that no settlement was had in 1884, since this would have required the selling out of the property of Greenleaf & Co. and the winding up of the business; that Patterson never was given credit in dollars and cents for his five years' service as a matter of bookkeeping, but that Patterson certainly understood that he became possessed of one-fourth of all the property of the concern after he was charged with one-fourth of the value of the property as of 1879. The books of the company, as kept by Patterson himself, show that yearly settlements of his account with the firm of George D. Patterson & Co. were had, and that the amount due from him to the firm, while only $6,040.19 in July, 1884, was the sum of $15,967.93 on January 27, 1894.

The referee, after hearing the testimony and examining the books of the partnership, found that the said partnership owed George D. Patterson the sum of $8,257.70 with interest from January 27, 1894, the date the receiver of the partnership property was appointed; that no settlement was ever had between the parties of the transactions under the contract of 1879, nor was there ever any balancing of accounts under the partnership formed and existing after the termination of said contract. Upon the matter being referred back to the referee for a further report, he found, in addition to the above findings, that the co-partnership was indebted to John T. Murphy in the sum of $677.79, and to Henry L. Chipman in the sum of $52.49; that the interests of the several partners were:

Murphy one-half, Patterson one-quarter, Chipman one-quarter; that Murphy and Chipman were not entitled to have credited to them their respective shares of the net profits of the business at the end of the five years mentioned in the contract of 1879, for the reason that said contract provided that all profits shall be reinvested in live stock, and that under said contract Patterson was entitled to a credit of one-quarter of said profits at that time as his salary as superintendent; that the quarter of the profits thus appropriated became expenses, and so could not be reckoned among the profits. The court, however, refused to accept or adopt the findings of the referee either as to the indebtedness of the firm to Patterson, or as to the absence of any settlement between the partners, or as to the credit given Patterson for a one-quarter of the profits as salary; but, on the other hand, found that the partnership was formed in 1884; that Murphy bought out the interest of Greenleaf in 1888; that, in addition to his one-fourth interest in said partnership, defendant was to receive $100 per month for his personal attention to the business of the firm; that at the time said co-partnership was originally formed each partner contributed one-fourth of the assets; that defendant Patterson contributed his one-fourth in the shape of the profits coming to him under the contract of 1879 and one-fourth of the original plant, such one-fourth being $3,116.40, for which he was debited on the books of the co-partnership, he not having paid for same; that, in addition to such debit of $3,116.40, defendant Patterson also owed the partnership at the time it was formed in 1884 the further sum of $2,941.55 for moneys theretofore advanced to him, which sum was also charged against him on the books of the firm. The court further found that each year from and after the formation of the partnership a settlement and adjustment of the business of the previous year was had between Patterson and Murphy; that at the times these yearly settlements occurred Patterson would be debited with what he had drawn out of the business, and a balance ascertained in the accounts of Patterson and the other partners with the partnership; that on the 27th day of Jan-

uary, 1894, Patterson was indebted to said firm in the sum of
$15,967.93, together with interest on $12,872.31 thereof
from said date at the rate of 12 per cent. per annum, with an-
nual rests, and interest on the sum of $3,095.62 thereof from
said date at the rate of 10 per cent. per annum, with annual
rests,—the principal and interest amounting on March 13,
1897, to the sum of $22,515.63, wholly unpaid.   As a legal
conclusion the court found said Patterson to be indebted to
said firm in the sum of $22,515.63 on March 13, 1897, and
that said sum constituted a part of the assets of said firm.
The other findings and conclusions of the court we need not
now consider.

Counsel for appellant attack these findings and conclusions
on the ground, among others, that they are unwarranted by
the facts now before us.   After a careful consideration of
the whole record, we cannot agree with counsel, but are forced
to the conclusion that the deductions drawn by the court be-
low from the evidence are sound, and in accordance with the
acts and intention of all the parties.   The primary error in
the calculations of the referee, and to which his mistake in
finding that there was due from the firm to Patterson the sum
of $8,257.70 may be attributed, was in giving Patterson credit
for the sum of $8,695.76 as of the time the partnership was
formed, to wit: July 15, 1884.   Appellant says that under
the agreement of 1879 he was to have one-quarter of the pro-
fits at the end of five years.   This is true, but it is also true
that he was to buy a quarter interest in the original plant at a
stated price, that he was to pay for this interest out of the
profits as they were realized and determined, and that at the
end of the five years—the life of the contract—a final settle-
ment of all accounts was to be made, and final profits arrived
at and determined.   The evidence shows that at no time dur-
ing this five-year period were any of the profits of the business
determined, nor did Patterson pay any part of the amount he
owed for his quarter interest in the original plant, or of the
moneys that had been advanced to him.   And when the con-
tract of 1879 was at an end, although under its terms he was

entitled to one-quarter of the profits which had accrued, Patterson nowhere claims he asked for the settlement of accounts provided for in the contract. Had he done so, and had the property of the firm been sold, and the moneys realized therefrom divided, he would have had a balance in his favor. But another course was adopted. A new partnership was formed; of this new partnership Patterson became a member. Of its profits he was entitled to one-fourth under the contract of 1879, and of its property he became a quarter owner by buying such interest from the other members of the firm, who were the sole owners of the original plant. This quarter interest in the plant Patterson did not pay for in cash. With the consent of all the parties, the agreed value thereof was charged against him on the books of the company. With this charge against him, and with the debit for moneys theretofore advanced to him, Patterson became a member of the firm of George D. Patterson & Co. When the last-named firm was formed, appellant says that, in addition to the quarter interest in the original plant, he was entitled to a quarter interest of the profits then existing and, after this interest in the profits had been set aside and credited to him, to a quarter interest in the profits then remaining. The evidence, the acts of the parties, the statements contained in the books, the annual settlements participated in by Patterson, are all against this contention. The testimony of Murphy is clear and explicit on this point, and we refer to it without further comment. When Patterson took charge of the books of the firm, or at least when he was present at the first yearly settlement and adjustment of the accounts of the partnership, he must then have known that upon the partnership books he was debited with the amount of money advanced to him, and with the value of his interest in the original plant. If, as he now claims, he should have been credited with a quarter of the profits existing in 1884, why did he not at that time insist upon such credit? Or, if it was the understanding of the parties that out of his share in the profits he was to pay what was due from him to the firm, and be given credit for any balance in

his favor, Patterson was in a position to ask that this be done. But for ten years the books, of which he had knowledge, because kept by him, were permitted to show a charge against himself, bearing interest, increasing with each year, and yet nowhere do we find, either in his answer, or his testimony, or on the books, any credit claimed by Patterson other than that of being a quarter owner in the firm property.    The fact that after the partnership of 1884 was formed Patterson was allowed and received $100 per month for his services as manager, together with provisions for himself and family, tends to bear out the testimony of the witness Murphy in effect, that the partnership of 1884 was a new agreement, and that no attempt was made to carry out all the terms and conditions of the contract of 1879. Another circumstance leading to the same conclusion is this:  In 1884 it is admitted that Greenleaf & Co. owned the whole of the original plant.    Under the contract of 1879 the money Patterson was to pay for his one-fourth interest therein would have gone to the members of the firm of Greenleaf & Co.    It appears from the evidence, however, that it was agreed the value of this quarter interest should be charged to Patterson on the books of the new firm, instead of remaining a debt due to the members of the old firm of Greenleaf & Co.,—a course manifestly to the advantage of Patterson, since, under the plan pursued, he is only called upon to pay three-quarters of the purchase price, with interest, of his quarter interest in the original plant.

Unaided by the facts before us, it would be difficult to give force and effect to all the terms of the contract of 1879, since there is a conflict between certain of its provisions, while others, as we have shown, were never acted on or carried out.    In the light of events subsequent to the formation of the contract of partnership of 1884, we cannot but feel that the findings of the court below are in accord with the evidence and understanding of the parties, and so will not be disturbed on this appeal.

The other errors urged not being sufficient to warrant a reversal, the judgment and order appealed from are accordingly affirmed.                                                   *Affirmed.*

MR. JUSTICE PIGOTT, having been of counsel, did not hear the argument and takes no part in this decision.

[Submitted October 30, 1900.  Decided January 7, 1901.]