## IN RE COURTNEY'S ESTATE.
## COURTNEY, APPELLANT, v. DALY BANK & TRUST CO. OF BUTTE, ET AL., RESPONDENTS.

### (No. 2,057.)

(Submitted December 27, 1904.   Decided January 25, 1905.)

*Executors — Removal — Incompetency—Report of Referee—*
*Disapproval—Appeal—Presumptions.*

Executors—Removal—When Proper.
  1.  Under Code of Civil Procedure, Section 2434, the court properly removed an executor who was palpably deficient in the understanding necessary to enable one to transact business, who made no sufficient effort to collect the debts due the estate, who never read and did not know the contents of affidavits attached to his report. who was ignorant of his personal business relations with the decedent whose estate he was administering, and who, in short, was incompetent because incapable.
Executors—Accounts—Referees—Reports—Advisory Only.
  2.  The report and findings of a referee, appointed for the purpose of examining the account of an executor, hearing the objections thereto and making report thereon, are merely advisory to the court, and may be adopted, modified, or disapproved, as the court sees fit; and the court may, if it so desires, take further testimony, and make findings of its own on which to base its orders.
Executors—Compensation—Settlement of Accounts—Presumption.
  3.  On appeal from an order settling the semi-annual account of an executor and from an order revoking his letters, it will be presumed, in the absence of anything in the orders on the subject, that upon a final settlement of the estate the proper compensation will be allowed to the executor for his services.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

IN THE matter of the estate of Thomas F. Courtney, deceased. From an order revoking letters testamentary granted to Dennis C. Courtney, and from an order settling the semi-annual account of said Courtney, he appeals. Affirmed.

*Mr. C. P. Connolly,* and *Mr. George F. Shelton,* for Appellant.

Letters testamentary will not be revoked because of any error of judgment on a doubtful question or mistake of the executor

as to his legal rights. (*Sparrow's Succession,* 39 La. Ann. 696; *Gray's Estate,* 4 Kulp (Pa.) 157.) Acts done in good faith under advice of counsel do not furnish grounds for revoking letters of administration. (*Loxley's Estates,* 14 Phil. (Pa.) 137.) A merely technical maladministration will not authorize the revocation of letters testamentary, but it must be such as involves actual injury, or reasonable apprehension of injury, or is attended with circumstances indicative of fraud. (*Killam* v. *Costly,* 52 Ala. 85.) There should be undoubted proof of the utter improvidence and unfitness of an executor for the duties of his trust to justify his removal. (*Matter of Joseph,* 15 N. Y. St. Rep. 752; *Cotterell* v. *Brock,* 1 Bradf. 148.)

Before a creditor can have an executor or administrator removed, he must allege and show that he has been injured by the maladministration complained of. (1 Woerner, Adm'r, p. 577, Sec. 271, and p. 580, Sec. 272; *Succession of De Cuir,* 23 La. Ann. 166.) An executor may commit errors in his accounts or make mistakes in his construction of the will. These the court will correct, but will not remove the executor unless there is wilful misconduct, waste or improper disposition of the assets. (1 Woerner, star page 580; *Witherspoon* v. *Watts,* 18 S. C. 396; *Carpenter* v. *Gray,* 32 N. J. Eq. 692.; *McFadgen* v. *Council,* 81 N. C. 195.)

*Mr. A. J. Campbell, Mr. Roy S. Alley,* and *Mr. Bernard Noon,.* for Respondents.

The retention of any portion of money received for the estate by the executor amounted to a mismanagement of the estate. (Statute of Frauds, Sec. 2340, C. C. P. of Montana; Sec. 1551, C. C. P. of Montana, on Question of Gift; *Vogel* v. *Gast,* 20 Mo. App. 104; *In re Summerville,* 20 N. Y. Supp. 76; *Minns* v. *Ross,* 42 Ga. 121; *Danbenspeck* v. *Biggs,* 71 Md. 225; *Merritt* v. *Merritt,* 9 Ky. Law Repts. 721; *Bogan* v. *Finley,* 19 La. Ann. 94; *Tillman* v. *Mosley,* 14 La. Ann. 710; *Frost* v. *Admr.,* 33 Vt. 639; *Bigelow* v. *Payton,* 4 Mich. 170; *Spencer* v. *Vance,* 57 Mo. 427; *Blasdel* v. *Lock,* 52 N. H. 238.)

MR. JUSTICE MILBURN delivered the opinion of the court.

This matter is before us on appeal from an order of the district court revoking the letters testamentary one time issued to the appellant in the matter of the last will and testament of Thomas F. Courtney, deceased, and from the order made on the 1st day of December, 1903, settling the semi-annual account of the said executor. Objections having been made by the respondent, the Daly Bank & Trust Company, to the report and account of the executor, the matter was referred to a referee, who made his report and recommendations. These were disapproved and set aside by the court. It revoked the letters testamentary, appointed Thomas S. Hogan special administrator, and ordered all property remaining in the hands of the executor to be turned over to the special administrator. The court, in its order removing the executor, found that the said Dennis C. Courtney was incompetent to act as executor.

The ten errors of law assigned can be reduced to three: First, that the court erred in revoking the letters testamentary; second, that the court erred in settling the account of Dennis C. Courtney, in that it refused to allow a certain item therein, to-wit, "Money received since last report, to-wit, lease money not previously reported, $1,199.28"; and, third, that the court erred in setting aside the report of the referee, Forestell, "and in proceeding to take testimony upon the same, after it had been submitted to the court for approval."

The court, in its decree, states that it found the said Dennis C. Courtney to be incompetent to act as executor, and, further, that he had mismanaged the affairs of the estate. To cite, even from the testimony given by the appellant himself before the court, all the evidence going to show conclusively that he is a man incompetent to attend to his own business or the business of other people, would be to consume more time and space than we need to use. His own statements prove that he did not know anything whatever definite about his own personal business re-

lations with his brother—he claiming to have advanced him large sums of money from time to time, which had not been accounted for—or the business of his brother with other persons, or the amount of money due the estate. It also appeared that he had not made any sufficient effort to collect debts said to be due the estate, or to find out whether in fact they were valid claims of the deceased against the alleged debtors.

Appellant contends that the court erred in holding that appellant was incompetent to act as executor, and that the evidence was insufficient to sustain a finding of incompetency, in this: that, in order to sustain such a finding, it was necessary that evidence should have been adduced showing or tending to show that the executor was under the age of majority, or convicted of an infamous crime, or adjudged by the court or judge incompetent to execute the duties of the trust by reason of his drunkenness, improvidence or want of understanding or integrity (Section 2434, Code of Civil Procedure); and, further, that there was not any evidence whatever showing or tending to show any such facts adduced at the hearing or before the court.

While it does not appear that the executor was guilty of willful wrong, a very casual perusal of the evidence produced at the hearing will show that there was, and has been all along, a very grave and palpable want of understanding on his part, and that he is for that reason incompetent, because he is incapable. Reference to any standard dictionary as to the meaning of the word "improvidence," as used in the section cited, with a slight consideration of the evidence adduced, will show that improvidence is characteristic of the executor. On the witness stand he testified that he never read the affidavits attached to his reports, and from his testimony it is evident that he did not know what they contained. The court would have been very derelict in its duty, especially considering the large number of claims against the estate as shown by the record, if

it had allowed the appellant to remain in his responsible position.

So far as the disallowance of the $1,199.28 is concerned, the court was correct in its ruling disapproving the item. It is shown by the evidence that the decedent in his lifetime received a "political lease" of a part of the Colusa-Parrot mine, and that decedent desired the fact to remain secret. There was not any record of this lease. It never was evidenced by writing. It seems that while the decedent was a state senator in the Seventh Legislative Assembly he was told he could have this lease. The executor claims to have been told by the decedent that he (Dennis) should have one-half of the interest of the decedent in the lease; Thomas F. Courtney apparently having permitted one or two others to have a third interest therein. In the inventory there is not any mention made of this asset, or of any of the money received therefrom. It seems that $7,342.90 was paid by the smelter people to the lessees for ores. The executor did not make any effort whatever to find out whether this amount was correct or not, and very apparently he does not know anything about it. There was paid to him as money actually received by the executor on account of the lease, which is variously stated by him one time to have been $2,034, and at another $2,074. This money he kept in his house for about a year, and then gave it to his wife, and allowed her to deposit it in bank in her own name, and then undertook to account for $1,199.28 of it as being one-half of the two-thirds of the lease money which he had received, having theretofore stated to the court that his reports and inventory were correct, they omitting any reference to the lease or any proceeds therefrom. There was a settlement with one Kilgallon, so it appears from the evidence, wherein he was paid one-third of the sum of $7,342.90, the proceeds of the mine less certain expense money. The settlement is unique in that it only charges one-third of the expense for labor, etc., against the gross receipts of $7,342.90, and then divides the remainder by three, in order to arrive at the interest of Kilgallon, he claiming a one-third interest in the

lease; thus making Mr. Kilgallon a present of a large sum of money, in that all the expenses were not charged up against the latter before division was had. The court was correct in disallowing the item, as we have said above, and the matter of this lease should be thoroughly investigated by the court and its officer, the administrator, to the end that a correct statement of the facts may be made.

The court did not err in setting aside the report of the referee, which recommended that the report and account of the executor be approved except as to the item of $1,199.28, and that the executor be not removed; suggesting to the court further that the executor be charged in the account with the sum of $1,-303.60, instead of $1,199.28, as received on account of said lease. The report and findings of a referee may be adopted, modified or disapproved altogether, as the court may see fit, where the reference was only for the purpose, as in this case, of examining the account of the executor and the objections thereto and making "report thereon." The court, not being satisfied from the evidence adduced before the referee that the findings and recommendations of the referee were correct and proper, took further testimony, and made its own findings and conclusions, and the two orders from which the appeals have been taken. As we have said heretofore, the action of the court in making the orders was correct, and, considering what we have already said as to the incompetency and improvidence of the executor, the court, not being satisfied with the findings and recommendations of the referee, did not err in setting aside the findings of the referee in the premises. The report of the referee was merely advisory to the court. (*Murphy* v. *Patterson,* 24 Mont. 575, 63 Pac. 375, and cases cited.)

The point is made in the brief of counsel for the appellant that the executor seems to have been deprived of any compensation for services that may have been rendered by him as executor. There is not anything said upon this subject in either one of the two orders of the court appealed from. It is, of course, to be presumed that upon a final settlement of the estate the

proper compensation will be allowed to all the executors and administrators who have taken or may take part in the administration of the estate, and, if anything is due to Mr. Courtney at that time, the court will make the proper award to him. The orders appealed from are affirmed. .

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.